# McCutcheon's Appeal.

1. By virtue of the provisions of the Act of April 15th 1868, § 1, Pamph. L. 103, where any person makes provision for his family or dependent relatives by taking out a policy of insurance on his own life in their name and for their benefit, the title vested in such beneficiaries is good notwithstanding the claims of the creditors of the insured. The question of good faith or fraud upon the rights of such creditors by the insured does not arise and cannot be raised in such case.

2. Elliott's Executors' Appeal, 14 Wright 75, commented on and distinguished.

3. Where, however, a person takes out a policy of insurance upon his own life in his own name and subsequently assigns the same to his wife, child or other dependent relative, the title of such assignee may under the terms of the above statute be attacked by the assignor's creditors, if the assignment has been made in fraud of their rights.

4. The mere fact that the assignor in such case is insolvent at the time of making the assignment does not warrant the inference that the assignment was in fraud of creditors. It may, notwithstanding, have been made in good faith and without fraud.

5. A. took out a policy of insurance on his own life payable to his wife, and becoming subsequently indebted to various parties, induced her by fraud and coercion to assign said policy to B. as collateral security for an antecedent debt due from A. to B. B. was ignorant of the fraud and coercion, and paid several premiums on the policy, and afterwards, A. proving insolvent, was active in inducing A.'s creditors to sign a composition agreement which was accordingly effected. B. concealed the fact that the policy had been assigned to him, and there was no evidence that the other creditors of A. knew it. Afterwards A. died. In a contest between his widow and B. for the amount of the policy, *Held*, that B. was not to be regarded as an innocent purchaser for value, and was therefore entitled only to a return of the premiums paid by him with interest thereon, and that the widow of A. was entitled to the fund. *Held*, further, that as none of A.'s other creditors had attacked the validity of the assignment to B., it was not affected by the circumstance that B. concealed the fact of the assignment from such other creditors.

November 5th 1881.   Before Sharswood, C. J., Mercur, Gordon, Trunkey, Sterrett and Green, JJ.   Paxson, J., absent.

Appeal from a decree of the Court of Common Pleas No. 1, of *Allegheny county:* In equity: Of October and November Term 1881, No. 294.

This was an appeal by Clarissa McCutcheon from a decree overruling her exceptions to the report of a master and confirming the same.

A bill in equity for an interpleader was filed by the Ætna Life Insurance Company against Clarissa McCutcheon, and Sarah Ann Wilson, executrix of John Wilson, deceased, to determine the title, as between the defendants, to a fund due by the said insurance company upon two policies of life insurance, upon the life of William McCutcheon, deceased. The defendants filed separate answers, and, after hearing, the court entered a decree of interpleader, ordered the fund in controversy to be paid into court, and appointed an examiner and master (S. A. McClung, Esq.) to take testimony and report the facts and a decree. The master found the facts to be substantially as follows:

In 1865 or 1866 William McCutcheon, being then solvent, effected an insurance on his life in the Ætna Life Insurance Company for $10,000 in favor of his wife, Mrs. Clarissa McCutcheon. On July 5th 1871, he surrendered the said policy to the company and received in exchange therefor two policies of insurance on his life, one a paid-up policy for $835, the other for $10,000 upon an annual premium, both in favor of his wife. At the time of this exchange of policies in 1871, McCutcheon was insolvent.

On September 7th and 12th 1872, William McCutcheon procured from his wife assignments of these policies to John Wilson, to secure an antecedent indebtedness of McCutcheon to Wilson. Notice was given by Wilson to the company, and the premiums upon the $10,000 policy were paid by John Wilson and by his executors after his death.

Soon after the assignment of the policies to Wilson, he attended a meeting of the creditors of McCutcheon, and, representing himself to be the largest creditor, promoted and joined in a composition, whereby McCutcheon was released from such portion of his debts as his assets could pay. He did not make known to the other creditors the fact that he had received these assignments, and they did not know it.

William McCutcheon died July 14th 1879. His widow immediately notified the insurance company that she claimed the proceeds of both policies of insurance on the ground that

the alleged assignments to Wilson had been procured from her involuntarily by coercion on the part of her husband and without any consideration therefor. The master reported that her allegation of coercion was established by the evidence.

Sarah Ann Wilson, executrix of John Wilson (who had died before McCutcheon), also demanded payment from the insurance company of the amounts of both policies. The insurance company thereupon filed their bill for an interpleader.

The master awarded to Mrs. McCutcheon the proceed of the $835 paid-up policy, on the ground that the assignment thereof by Mrs. McCutcheon to Wilson, having been obtained by fraud and coercion and without consideration, was void, and passed no title.

The master awarded the proceeds of the $10,000 policy to Sarah A. Wilson, executrix of John Wilson, deceased, on the ground that McCutcheon, having been insolvent at the time he effected it, could not by taking it out in the name of his wife, withdraw it from the claims of his creditors, of whom Wilson was the only one now claiming the fund. The master reported : " The first section of the Act of April 15th, 1868, P. L. 103, is broad in its terms, but is of course not intended to cover a case of actual fraud. If it covers such a case as this, then a man by borrowing money and investing it in life policies for the benefit of his family, and trusting to the Act to protect the policy against even the creditors who loaned him the money to pay the premiums, can enrich his family by a remarkably simple process."

The master refused to rule, as contended by Mrs. McCutcheon, that the conduct of Wilson in the composition proceeding estopped him and his personal representatives from claiming as against Mrs. McCutcheon any part of the proceeds of these policies.

Exceptions filed by Mrs. McCutcheon to that portion of the master's report awarding the proceeds of the $10,000 policy to Sarah A. Wilson, executrix, were overruled, and a decree entered confirming the report, and distributing the fund in accordance therewith, from which decree Mrs. Clarissa McCutcheon took this appeal.

*George Shiras, Jr.* (*C. C. Dickey*, with him), for the appellant.—The master and the court below failed to give effect to the Act of April 15th 1868, § 1 (Purd. Dig. 802), which provides : " All policies of life insurance, or annuities on the life of any person which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children or any relative dependent upon such per-

son, shall be vested in such wife or children or other relative free and clear from all claims of the creditors of such person."

Even in the absence of such a statute, this policy could not have been successfully attacked for fraud by creditors. The case of Elliott's Executors' Appeal, 14 Wright, 75, which was decided in 1865, before the passage of the Act, holds, it is true, that where an existing policy, in terms payable to the personal representatives of the assured, is by him, when insolvent, assigned to his wife and the premiums subsequently paid by him, such assignment will be deemed fraudulent as respects creditors. But the court was careful to say that the decision must not be understood as holding that if the policy had been by its terms made payable directly to the wife, such policy would be void, because the husband, when he paid the premiums, was insolvent.

The fact found by the master, that the assignment of both policies was procured by fraud and coercion, cannot now be questioned. Mrs. McCutcheon's rights, therefore, are the same as if it had never been executed. Even if the assignment had passed any title to Wilson, he was estopped from asserting it by his conduct at the creditor's meeting: Cullingworth *v.* Loyd, 2 Beavan 385; Ex parte Sadler & Jackson, 15 Vesey Jr. 52; Russell *v.* Rogers, 10 Wendell 473.

*John G. Bryant,* for the appellee.—The evidence showed that McCutcheon gave his note for the first premium due on the policy, on which he paid only $156. It was subject to lapse, and of no value, when Wilson, a bona fide creditor, lifted McCutcheon's note for the premium and received the assignment from Mrs. McCutcheon, knowing nothing of any coercion by her husband. Wilson and his executrix paid on the policy altogether nearly $5,000 in premiums. He was a bona fide purchaser for value without notice. The present value of the policy accrued solely by virtue of the payment of premiums by Wilson; Mrs. McCutcheon, who was entitled, at most, only to the value of the policy at the date of the assignment (which was nothing), cannot now claim its fruition.

The Act of 1868 cannot be invoked to maintain such a claim. The rights of the parties are to be determined upon equitable principles as upon a bill to cancel the assignment. The decree was equitable, and should not be disturbed even if the master based it on erroneous grounds.

Mr. Justice GREEN delivered the opinion of the court, November 21st 1881.

In Elliott's Executors' Appeal, 14 Wr. 75, it was carefully

said that we did not intend the doctrine of that case to apply to the case of policies effected directly to the wife. READ, J., on p. 83, used the following language, " We are to be understood in thus deciding this case that we do not mean to extend it to policies effected without fraud directly and on their face for the benefit of the wife and payable to her; such policies are not fraudulent as to creditors, and are not touched by this decision."

The policies in that case were effected in the name of the husband and by him assigned to a trustee for his wife at a time when he was totally insolvent. They were held to be valuable choses in action, the property of the assured, liable to the payment of his debts, and hence their voluntary assignment operated in fraud of creditors, and was void, as against them, under the statute of 13th Elizabeth.

Here, however, the policy was effected in the name of the wife, and in point of fact, was given under an agreement for the surrender of a previous policy for the same amount, also issued in the wife's name.

Now the Act of 15th April 1868, Purd. Dig. p. 802, expressly provides that, " All policies of life insurance, or annuities on the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to, the wife, or children, or any relative dependent upon such person, shall be vested in such wife or children, or other relative, free and clear from all claims of the creditors of such person." The plain meaning of this language is that protection shall be given to the wife, children, or dependent relative of the assured in two distinct classes of cases. First, those in which the policy was originally issued, or taken out, for the benefit of the persons named: and, second, those in which policies previously issued shall be, in good faith, assigned to those persons. The question of good faith, or fraud, only arises in the latter class: that is, when the title of the beneficiary arises by assignment. When it exists by force of an original issue, in the name, or for the benefit, of the beneficiary, the title is good notwithstanding the claims of creditors. In other words, the very object and purpose of the act was, to enable insolvent persons to make provision in this way for their families or dependent relatives, which should be good and effective as against, and free and clear of, all claims of creditors. There is no anomaly in this, nor any conflict with the letter or spirit of the statute of Elizabeth, because in such cases the policy would be at no time the property of the assured, and hence no question of fraud in its transfer could arise, as to his creditors. It is only in case of the assignment of a policy that once belonged to the assured that the question of fraud can arise under this act. If the assign-

ment was made in good faith and without fraud it would prevail, even against creditors, but if not, they could avoid it. It was just here, in failing to observe this distinction, that the learned master and court below fell into error. The master inferred the fraud from the mere fact of insolvency, but that inference, as we have seen, is not warranted in such a case as this. In all other respects, the findings and conclusions of the master were in favor of the appellant, and we concur in their correctness.

No appeal has been taken from the finding that the assignment by the appellant to Wilson was obtained by undue influence and coercion of her husband, and, therefore, that fact must be now considered as conclusively determined. Nor do we see any reason to doubt the correctness of the master's finding on this subject, even if it were an open question. We consider that he is equally correct in his conclusion that Wilson cannot be regarded as an innocent purchaser for value. He merely took the assignment as collateral security for a pre-existing debt or liability. He paid the maturing premiums voluntarily, and is of course entitled to have them returned with interest from the time of their payment. The master also rightly determined that as none of McCutcheon's creditors were impugning the validity of the assignment to Wilson, it was not affected by the circumstance that he concealed the fact of his holding it from them, when the composition was effected. It follows that the decree of the court below must be reversed and modified.

Decree reversed, and record remitted for further proceedings, and it is ordered that the fund in the court below be distributed by awarding to Sarah Ann Wilson, executrix of John Wilson, deceased, the full amount of all premiums paid by him and by his said executrix, together with interest on such payments from the time they were respectively made, and the remainder of the fund to Clarissa McCutcheon, the appellant, the costs of this appeal to be paid by the appellee.

# McAleer's Appeal.

A. held certain real estate in trust for his wife for life and after her decease or remarriage in trust for her children by him. The deed of trust contained a power of sale to A. as the natural guardian of his children " for such sum or sums of money as he might deem best for the interests of his said children." It also specially provided that A.'s wife