# The Ionia County Savings Bank and The Grand Rapids National Bank v. Jane McLean et al.

*Fraudulent conveyances—Assignment of insurance policy—Parent and child—Claim for services.*

1. An assignment by an insolvent debtor of a life insurance policy payable to himself, his executors, administrators, or assigns with intent to avoid the payment of his debts, is void as to creditors.

2. The question whether a transfer of property is void as to creditors cannot be affected by the fact that at the time the

84 Mich.—40.

debts were incurred the creditors did not know that the debtor owned the specific property transferred.

3. How. Stat. § 4238, which protects the money payable on a life insurance policy taken out by a husband or father for the benefit of his wife or children from the claims of his creditors, does not cover the assignment to them of a policy payable to himself, his executors, administrators, or assigns.

4. A daughter lived with her father as a member of his family for some eleven years after attaining her majority, but without any contract for hire, and with no other relation than that of father and daughter, and a member of the family, he promising to do something for her, and making a liberal provision for her in his will. And it is held that she had no valid contract which she could enforce either against him or his estate.

Appeal from Kent. (Grove, J.) Argued January 15, 1891. Decided February 27, 1891.

Bill to set aside a deed and the assignment of an insurance policy as fraudulent as to creditors. Complainants appeal from a decree setting aside the deed, but sustaining the assignment. Decree reversed, and one entered in this Court granting the full relief prayed. The facts are stated in the opinion.

*Butterfield & Keeney,* for complainants.

*Taggart, Wolcott & Ganson* and *Milton M. Perry,* for defendants McLean.

*Frank A. Rodgers,* for defendant Young.

GRANT, J. One Alexander McLean died July 14, 1887. He was the husband of the defendant Jane McLean, and father of the defendants Jennie and Leander McLean. On July 1, 1887, he executed a deed to his wife, conveying to her 90 acres of land. On May 4, he assigned to the defendants Jennie and Jane McLean a policy of insurance upon his life for the sum of $5,000. The bill in this case is filed to set aside this deed and the transfer

of the insurance policy as a fraud upon the creditors of Alexander McLean. By the decree of the court below the deed was set aside as fraudulent, and the transfer of the insurance policy was sustained as valid. Complainants alone appeal.

Said McLean, at the time of his death, was indebted to complainants upon two promissory notes,—one for $4,000, dated April 13, 1887; the other for $4,700, dated April 22, 1887,—executed by himself, and payable to the order of one J. S. Dougall. No money consideration was paid for either the deed or the policy of insurance, except one dollar, expressed in the assignment of the policy. The policy was issued in 1871, and by its terms was payable—

"To the said Alexander McLean, his executors, administrators, or assigns, in sixty days after due notice and satisfactory proof of death."

The annual premium was $148.25, which he had regularly paid, less the dividends; the last payment having been made April 7, 1887. These premiums were usually paid upon receipts sent by the company to the Lowell National Bank, which discounted the above notes, and afterwards transferred them to the complainants. Upon the consent of the executors the insurance company paid the amount of the policy to the defendants Jane and Jennie McLean. Complainants' claims were allowed against the estate in the amount of $9,255.05. Complainants made a written request to the executrix and executor to contest these transfers, and tendered a proper indemnity bond. They refused to institute such proceedings, and thereupon complainants commenced this suit. At the time these transfers were made, Alexander McLean was in failing health, and insolvent, and his estate is also insolvent.

In the absence of a valuable consideration aside from

love and affection, it is conceded that the transfer of this insurance policy is void as to creditors, unless it is protected by How. Stat. § 4238, which reads as follows:

"It shall be lawful for any husband to insure his life for the benefit of his wife, and for any father to insure his life for the benefit of his children, or of any one or more of them; and in case that any money shall become payable under the insurance the same shall be payable to the person or persons for whose benefit the insurance was procured, his, her, or their representatives or assigns, for his, her, or their own use and benefit, free from all claims of the representatives of such husband or father, or of any of his creditors."

It is manifest from the testimony of Jennie and Leander McLean that these transfers were not thought or spoken of until their father had executed these notes, which, according to their testimony, he did in order to save his worthless and criminal son-in-law, Dougall, from State prison. Jennie testified that the matter was earnestly discussed by the family; that they looked upon these debts as fraudulent, and they thought something could be done to help them. The obvious intent of the transfers was to avoid the payment of these notes, which constituted the great bulk of his indebtedness, and save the property for his wife and daughter. It needs no argument to show that transfers of property under such circumstances are, as to creditors, fraudulent in law and void.

This policy was property, a chose in action, and up to the time of its assignment it was the property of Alexander McLean just as certainly and effectually as a promissory note payable 10 years from date, or upon the happening of a certain event, was his property. Creditors had a right to rely upon that as one of his assets. For 16 years he had done nothing to indicate that this policy was for the sole benefit of his wife and daughter, any

more than the accumulation of other property was for their benefit. The law of this State exempts certain property for the benefit of the family. Beyond this, all of a man's property, when he is living, and of his estate, when dead, belongs first to his creditors, and must be applied to the payment of his debts. It is the inflexible duty of the courts to see that his property is thus appropriated. The question involved is one purely of law, not of sentiment. Because in the present case the application of the firmly established rule may result in taking from the heirs all the property of the estate, not exempt by law, for the benefit of creditors, this affords no excuse for not applying the rule. In the next case, there may be poor creditors to suffer, and rich heirs attempting to retain the property. In either case the law is the same, and must be inflexibly applied. These remarks are prompted by the strong and able appeal in the brief of counsel for the defendants, on account of their pecuniary condition.

A life insurance policy being property, it follows that its assignment must be governed by the same rule as that of other property. The assignment of a policy is not within the statute. Alexander McLean did not insure his life for the sole benefit of his wife and daughter. He insured it for the benefit of his estate, in which his creditors were to be interested. The argument is not sound that, because he could insure his life under this statute for the benefit of his wife and daughter, therefore he can assign a policy which was not taken out for their sole benefit, and thus place it beyond the reach of creditors. The distinction between the two is obvious. He might have transferred this, like any other property, to his wife or children without consideration, when solvent; but when, being insolvent, he transferred it without a

valuable consideration, it was subject to the payment of his debts, and the assignment was void.

If the defendants are correct in their contention, a holder of an endowment policy for $50,000 might, a few days before it becomes due, assign it to his wife or children, to the exclusion of his creditors. Such a transfer cannot, in my judgment, be sustained upon either legal or equitable principles. The law recognizes no distinction in the transfer of a debtor's property. Whatever is his, subject to his control, is his property for all intents and purposes; and, in the absence of statutory provision, all transfers made by him must be governed by the same rule.

It is of no consequence that Alexander McLean might at any time during his life have surrendered this policy, for its cash value or otherwise, or that he might have converted any of his property into cash, and taken out insurance directly for the benefit of his wife and daughter. The statute gave him that right. But this question must be determined by what he did do, not by what he might have done.

The defendants introduced evidence tending to show that the notes held by complainants were given by Alexander McLean in renewal of other notes, to which Dougall, his son-in-law, had signed McLean's name without authority. Considerable testimony upon this point was introduced upon both sides. It is unnecessary to determine the question, as it is entirely immaterial to the issue. The notes were allowed as valid claims against the estate, and defendants do not claim to here contest their validity; but they claim from this testimony that complainants did not take these notes in reliance upon this policy as an asset of Mr. McLean. It is wholly immaterial whether or not they knew of this policy at

that time. The sole question here is whether the transfer of this property was void as to creditors. This question cannot be affected by the fact that at the time the debts were incurred the creditors did not know that the debtor owned the specific property assigned.

The original answer was based upon the sole defense that the assignment was covered by the statute. After the testimony was closed, the court permitted an amendment, to the effect that, as to the defendant Jennie McLean, the assignment was for a valuable consideration. This consideration was based upon services which she had rendered as a member of the family. She lived there without any contract for hire, and with no other relation than that of father and daughter, and a member of the family. She testifies that her father promised to do something for her, and in his will made a liberal provision for her. She had no valid contract which she could enforce either against him or his estate, nor is there any evidence to show that he assigned this policy for any such consideration.

The decree of the court below must be reversed, and decree entered here for the complainants, with the costs of both courts.

The other Justices concurred.