EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED
STATES *v.* HITCHCOCK.

1. INSURANCE—CHANGE OF BENEFICIARY—EQUITY.

Execution of change of beneficiary by insured on form repre-
sented by insurer's agent as recommended by insurer and de-
livery of it to agent for forwarding to home office *held,* suf-
ficient to effect such change although insured committed suicide
before it reached home office and policy provided change be-
came effective only upon insurer's indorsement of change on
policy.

2. EQUITY—INSURANCE—INTERPLEADER.

Equity will protect the rights of intended beneficiaries in inter-
pleader suits, where contemplated change of beneficiary is not
complete before death intervenes.

3. FRAUDULENT CONVEYANCES—DEFINITION.

Conveyance, as defined in fraudulent conveyance act includes
every payment of money, assignment, release, transfer, lease,
mortgage or pledge of tangible or intangible property (3
Comp. Laws 1929, § 13392).

4. SAME—INTENT—CONSIDERATION.

It is unnecessary to show actual intent in order to establish fraud
as to creditors, under the fraudulent conveyance act, where the
conveyance is made or obligation incurred by an insolvent
debtor without a fair consideration (3 Comp. Laws 1929,
§ 13392 *et seq.*).

5. INSURANCE—PROTECTION OF FAMILY FROM CREDITORS.

The general policy of the law is to protect from the claims of
creditors, the insurance taken out by a husband for the mainte-
nance and support of his widow and children after his death
(3 Comp. Laws 1929, § 12451).

6. SAME — PROPERTY IN POLICY — CASH SURRENDER VALUE — EX-
PECTANCY.

A policy of life insurance may be considered as insured's prop-
erty in a limited sense only, and outside of the cash surrender
value it represents a mere expectancy dependent upon perform-
ance of certain conditions and the happening of a certain con-
tingency.

7. FRAUDULENT CONVEYANCES—INSURANCE—CASH SURRENDER VALUE.
   Within the meaning of the fraudulent conveyance act, the only
   property in a life insurance policy payable to insured's estate,
   which may be transferred by an insolvent, by changing bene-
   ficiary, is the cash surrender value of the policy at the time of
   the transfer (3 Comp. Laws 1929, § 13392 *et seq.*).

8. INSURANCE—FAMILY PROTECTION—RIGHTS OF CREDITORS—STAT-
   UTES.
   Act No. 70, Pub. Acts 1927, amending the insurance code by pro-
   tecting proceeds of family protection policies from insured's
   creditors regardless of whether proceeds are realized through
   surrender of policy for cash surrender value or otherwise, does
   not provide that policies originally payable to insured's estate,
   but transferred to members of his family while he is insolvent,
   shall be exempt from rights of his creditors (3 Comp. Laws
   1929, §§ 12451, 13392 *et seq.*).

9. FRAUDULENT CONVEYANCES—INSURANCE—CHANGE OF BENEFICIARY.
   Change of beneficiary by insured while insolvent from his estate
   to his minor children *held*, to entitle latter to payment of pro-
   ceeds upon his death, since such a change was not a fraud upon
   his creditors within fraudulent conveyance act, where five-year
   convertible term policy had no cash surrender value at time of
   change (3 Comp. Laws 1929, §§ 12451, 13392 *et seq.*).

Appeal from Alger; Runnels (Herbert W.), J.
Submitted October 3, 1934. (Docket No. 64, Cal-
endar No. 37,882.) Decided January 7, 1935. Re-
hearing denied March 5 ,1935.

Bill of interpleader by Equitable Life Assurance
Society of the United States, a New York corpora-
tion, against Louis William Hitchcock and Netta
Hitchcock, guardians of estates of John F. Fitz-
patrick and James E. Fitzpatrick, minors, and
others to determine right to the proceeds of an
insurance policy on the life of William C. Fitzpat-
rick. From decree for Hugh H. McMillan, adminis-
trator of the estate of William C. Fitzpatrick, de-
fendants Hitchcock, guardians, appeal. Reversed
and remanded for taking of further testimony and
entry of decree.

*Paul Fitzpatrick* (*William G. Fitzpatrick,* of counsel), for defendants Hitchcock.

*Glenn W. Jackson,* for defendant McMillan.

Butzel, J. Equitable Life Assurance Society of the United States filed a bill of interpleader to determine the disposition of the proceeds of a $5,000 insurance policy on the life of William C. Fitzpatrick, now deceased, claimed on the one hand by John F. and James E. Fitzpatrick, minor children of the deceased, or their representatives, and on the other by Hugh H. McMillan, administrator of the estate of deceased. Others also joined as parties defendant make no claim. William C. Fitzpatrick took out two policies in plaintiff company. One, over which there is no dispute, was payable to insured's three children; the other, involved in the instant suit, and dated October 17, 1930, was a five-year convertible term policy, with no surrender value, payable to the estate of the insured but reserving to him the right to change the beneficiary. Upon the death of the insured the amount due was payable either in installments or in a lump sum, at the option of the beneficiary. On February 19, 1932, after two annual premiums had been paid, decedent, with the assistance of the local agent of the company, attempted by formal instrument to change the beneficiary from his estate to trustees for his minor sons, the proceeds to be paid in monthly installments of $30 until they reached the age of 21, when they were to receive the balance, if any. The instrument purporting to make this change was forwarded to the home office of the company, but was returned as unacceptable because the company did not deem it to be in proper form.

According to the testimony of plaintiff's local agent, decedent thereupon executed a new application for change of beneficiary to his two minor sons, upon a form that the company had recommended. The second application was mailed to the company within a day or two prior to March 3, 1932, on which date insured committed suicide. The change of beneficiary evidently had not yet arrived at the company's home office at the time of the suicide. The record unfortunately is very meagre and sketchy and does not indicate whether the last change of beneficiary was direct to the minor children or to a trustee or trustees for their benefit, and whether it was payable in one sum or installments. At the time the change of beneficiary was made, the decedent was hopelessly insolvent. The total assets of his estate, exclusive of the policy, amount to $142.50, while the debts, many of long standing, are in excess of $7,000. One of the claims allowed is for a debt of $1,683 due a boarding house keeper from whom decedent had borrowed moneys from time to time, part of which was loaned for the express purpose of reinstating decedent's insurance. Decedent represented to this creditor that the purpose of the loan was to pay his insurance premium; that he would lose his insurance unless he could get the money; and that if the money were loaned it would surely be repaid, because upon his death his son, who knew about the loan, would see that payment was made out of the insurance.

The trial judge held that the change in beneficiary had not been properly effected, but that even if it had been, the transfer of the policy by the insured from his estate to his minor children was fraudulent and void as to his creditors, and the administra-

tor of the estate was therefore entitled to the proceeds of the policy. The two minor children appeal from this decree.

If the decedent under the circumstances had the right to change the beneficiary, notwithstanding his insolvency, the steps taken would have been sufficient to make such change effective. His execution of the change of beneficiary on the form represented by the agent as having been recommended by the company, and the delivery of the application to the agent for forwarding to the home office, were sufficient, notwithstanding the fact that the policy provided:

"The insured may, from time to time, by written notice duly filed at the society's home office, change the beneficiary, but said change shall take effect only upon its indorsement on its policy by the society."

The insured did all that was required of him and there remained only a ministerial act on the part of the company to complete the change, an act which the company was bound to perform and undoubtedly would have performed had it not been for the intervention of death prior to the notice reaching the home office of the company. The latter was in no way damaged by the delay or by its own failure to carry out a purely ministerial act. Under the circumstances, equity will protect the rights of the intended beneficiary. *Supreme Court, I. O. F.,* v. *Frise,* 183 Mich. 186.

The serious question is whether the change of beneficiary was a conveyance in fraud of creditors and therefore void under Act No. 310, Pub. Acts 1919 (3 Comp. Laws 1929, § 13392 *et seq.*), known as the fraudulent conveyance act. The term "con-

veyance'' as defined by the act includes every pay-
ment of money, assignment, release, transfer, lease,
mortgage or pledge of tangible or intangible prop-
erty. The fraudulent conveyance act, *supra,* differs
from the act previously in force, 2 How. Stat.
§ 6203, in that the present act makes it unnecessary
to show actual intent in order to establish fraud as
to creditors where the conveyance is made or the
obligation incurred by an insolvent debtor without
a fair consideration. In *Ionia County Savings
Bank* v. *McLean,* 84 Mich. 625, decided in 1891, the
insured, shortly before his death, and while insol-
vent, assigned to his wife and one of his daughters
a policy payable to himself, his executors, adminis-
trators or assigns. The court, in setting aside the
assignment as one in fraud of creditors, held that a
policy of insurance payable to the insured, his exec-
utors, administrators or assigns, was property be-
longing to the insured just as any other tangibles or
intangibles; that as such its assignment must be
governed by the same rule as that of other prop-
erty; and that the transfer of the policy by the
insured without consideration, while insolvent, was
therefore a direct fraud on his creditors. This rule
has been followed by a number of courts in juris-
dictions where there is no statutory provision di-
rectly to the contrary. *Bailey* v. *Wood,* 202 Mass.
562 (89 N. E. 149); *Central Bank of Washington* v.
*Hume,* 128 U. S. 195, 204 (9 Sup. Ct. 41); *Gould* v.
*Fleitmann,* 188 App. Div. 759 (176 N. Y. Supp. 631);
*Appeal of Elliott's Executors,* 50 Pa. 75 (88 Am.
Dec. 525); *Pope* v. *Carter,* 210 Ala. 533 (98 South.
726). Also, see *Navassa Guano Co.* v. *Cockfield,*
165 C. C. A. 363 (253 Fed. 883, 6 A. L. R. 1168), and
notes in 6 A. L. R. 1176.

We are impressed with the reasoning of the court in *Ionia County Savings Bank* v. *McLean, supra,* which calls attention to the fact that if this were not the rule, a person heavily in debt might defraud his creditors by transferring a large endowment policy to a near relative a few days before it became due, without any consideration. However, we are at the same time mindful that the general policy of the law in this State (see 3 Comp. Laws 1929, § 12451), as well as in other States, is to protect from the claims of creditors the insurance taken out by a husband for the maintenance and support of his widow and children after his death. We believe that the evil which prompted the holding in *Ionia County Savings Bank* v. *McLean, supra,* can be avoided, while at the same time a certain measure of protection to the wife and children can be provided through insurance, by limiting the creditors' right to the recovery of the cash surrender value of the policy at the time of the transfer. Although it is true that a policy is property, it is only so in a limited sense. It is clearly distinguishable from a promissory note payable at some future date. Outside of the cash surrender value, if there be any, an insurance policy represents a mere expectancy dependent upon the performance of certain conditions and the happening of a certain contingency. We therefore believe that until the death of the insured nothing except the cash surrender value of an insurance policy, the actual value of what was transferred, is property within the meaning of the statute declaring fraudulent conveyances and assignments void, and that the proper rule is to limit creditors to a recovery of the cash surrender value of the policy at the time of the transfer. See *Davis, State Bank Commissioner,* v. *Cramer,* 133 Ark. 224

(202 S. W. 239); *Mahood* v. *Maynard,* 114 W. Va. 385 (171 S. E. 884); *Coulter* v. *Willard,* 156 Va. 79 (158 S. E. 724); *White* v. *Pacific Mutual Life Ins. Co.,* 150 Va. 849 (143 S. E. 340); *Moorehead's Administrator* v. *Mayfield,* 109 Ky. 51 (58 S. W. 473).

If the policy in the instant case had a cash surrender value at the time of the transfer, the proceeds of the policy, to the extent of such cash value, would not have been exempt from attacks of creditors of the insured under 3 Comp. Laws 1929, § 12451, which reads as follows:

"It shall be lawful for any husband to insure his life for the benefit of his wife, and for any father to insure his life for the benefit of his children, or of any one or more of them; and in case that any money shall become payable under the insurance, the same shall be payable to the person or persons for whose benefit the insurance was procured, his, her or their representatives or assigns, for his, her or their own use and benefit, free from all claims of the representatives of such husband or father, or of any of his creditors; and any married woman, either in her own name or in the name of any third person as her trustee, may cause to be insured the life of her husband, or of any other person, for any definite period, or for the term of life, and the moneys that may become payable on the contract of insurance, shall be payable to her, her representatives or assigns, free from the claims of the representatives of the husband, or of such other person insured, or of any of his creditors; and in any contract of insurance, it shall be lawful to provide that on the decease of the person for whose benefit it is obtained, before the sum insured shall become payable, the benefit thereof shall accrue to any other person or persons designated; and such other person or persons shall, on the happening of such contingency, become the lawful owner or owners of

the policy of insurance, and entitled to enforce the same to the full extent of its terms, notwithstanding he, she or they may not at the time have any such insurable interest as would have enabled him, her or them to obtain a new insurance; and the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured.''

The effect of the above statute, as originally enacted (Act No. 77, § 23, Laws of 1869 [1 How. Stat., § 4238]) without the last clause above quoted, was considered by our court in *Ionia County Savings Bank* v. *McLean, supra,* where it was held that there was a clear distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself or his legal representatives, and the obtaining of a policy by a person for the benefit of his wife and children and payable to them; and the court held that the statute did not apply to an assignment by the insured to his wife and children of a policy originally taken out for the benefit of his estate. The statute as thus considered in *Ionia County Savings Bank* v. *McLean, supra,* was later amended by Act No. 70, Pub. Acts 1927, 3 Comp. Laws 1929, § 12451, so as to add the following clause:

''And the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured.''

The above amendment simply clarifies the meaning of the statute as originally worded, so as to specifically exempt all proceeds of the policies de-

scribed in the original statute, whether such pro-
ceeds are realized through the surrender of the
policy for its cash surrender value, or in any other
manner.   The amendment, however, does not pro-
vide that the proceeds of a policy originally payable
to the estate of the insured, but later transferred to
his wife or children, shall be exempt from the rights
of creditors of the insured.   Such a provision does
appear in the statutes of some States.   *Pearsall* v.
*Bloodworth*, 194 N. C. 628 (140 S. E. '303); *Elliott* v.
*Bryan*, 64 Md. 368 (1 Atl. 614); *Morehead's Admin-
istrator* v. *Mayfield, supra,* and *McCutcheon's Ap-
peal*, 99 Pa. 133.   A subsequent amendment to the
statute, by Act No. 170, Pub. Acts 1931, extending
the exemption to policies made payable to a trustee
for the benefit of the wife, husband or children of
the insured, is not material.

The question as to the right of creditors to re-
cover the cash surrender value does not even arise
in the instant case, inasmuch as the policy here in-
volved had no cash surrender value whatsoever,
and therefore the change of beneficiary executed by
the insured while insolvent did not constitute a
conveyance of property in fraud of creditors within
the meaning of the fraudulent conveyance act.   The
two minor children, or a trustee for them, are there-
fore entitled to the proceeds.

The decree is reversed, with costs to appellants,
and the case remanded to the trial ·court to take
such further testimony as may be necessary, and
enter a decree in accordance with this opinion.

POTTER, C. J., and NORTH, FEAD, WIEST, BUSHNELL
and EDWARD M. SHARPE, JJ., concurred.   NELSON
SHARPE, J., did not sit.