# STATE OF MICHIGAN

# COURT OF APPEALS

DC MEX HOLDINGS LLC,

        Plaintiff-Appellee,

v

AFFORDABLE LAND LLC,

        Defendant,

and

DALE B. FULLER,

        Defendant-Appellant,

and

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

        Garnishee-Defendant.

FOR PUBLICATION
July 25, 2017
9:05 a.m.

No. 332439
Oakland Circuit Court
LC No. 2011-122199-CB

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

On October 7, 2013, plaintiff, DC Mex Holdings, LLC, was awarded a $2,500,000 judgment against defendant, Affordable Land, LLC, and defendant-appellant, Dale B. Fuller, jointly and severally. After this Court affirmed the judgment on appeal,[1] DC Mex filed a request for a writ of nonperiodic garnishment naming the Prudential Insurance Company of America as the garnishee. After the writ of garnishment was entered, Fuller filed a motion to quash it, but the trial court denied the motion. Thereafter, Fuller filed an application for leave to appeal the

---

[1] *DC Mex Holdings, LLC v Affordable Land, LLC,* unpublished opinion per curiam of the Court of Appeals, issued May 5, 2015 (Docket No. 318791).

order denying the motion, which this Court granted.[2]  Because the trial court erred in denying the motion to quash the garnishment, we reverse and remand for further proceedings.

## I.  BASIC FACTS

Relevant to this appeal, DC Mex sought a writ of garnishment regarding any property or money that Prudential held belonging to Fuller, and the deputy clerk entered the writ. Subsequently, Prudential filed a disclosure indicating that Fuller owned an individual life insurance policy with an approximate cash value of $73,078.91.  The disclosure also indicated that "[l]ife insurance may be exempt from garnishment under" MCL 500.2207.

On January 27, 2016, Fuller filed an objection to the garnishment indicating that the funds were exempt and that the cash value was not owing and did not represent a debt.  In Fuller's brief in support of the objection, he argued that the cash value of his life insurance policy was exempt under MCL 500.2207(1) because the policy was payable solely to his daughter.  Fuller further argued that the garnishment statute only applied to obligations owing at the time of the writ, that he did not request a surrender of his policy or withdrawal of the cash value, and that the cash value was not owed to him.  Thus, Fuller requested that the trial court grant his objection and quash the writ of garnishment, and he further requested fees and costs under MCR 2.114(F) and MCL 600.2591.

On February 5, 2016, DC Mex filed a response to the objection.  DC Mex argued that the cash value of a life insurance policy was not protected under MCL 500.2207 during the insured's lifetime.  According to DC Mex, under Fuller's interpretation, "a judgment debtor could simply 'park' all available cash in the 'cash value' portion of a life insurance policy and prevent a judgment creditor from collecting it, even though the judgment debtor could at any time retrieve some or all of the 'parked' cash."  DC Mex did not dispute that MCL 500.2207 exempted life insurance proceeds, including the cash value, but, under DC Mex's interpretation of MCL 500.2207, the exemption only applied when the money became payable (i.e., after the insured's death).  DC Mex argued that the cash value was not exempt during Fuller's lifetime and that it was irrelevant that Fuller had not requested the cash value of the policy.

On February 10, 2016, the trial court held a hearing on the objection.  Fuller argued that the cash value of a life insurance policy was only relevant during the insured's lifetime and that the statute specifically exempted the cash value.  The trial court asked what would happen if the cash value was withdrawn during the lifetime, and Fuller responded that the cash would be able to be garnished if he cashed out his policy.  However, Fuller noted that he did not cash out his policy.  Fuller argued that, in order for Prudential to owe money, he would have to submit a request for the cash value.  Fuller further argued that there was no basis for the garnishment and requested fees and costs.  The trial court noted that it did not think the cash value was able to be garnished unless it was cashed out and that it did not "think [Fuller] should be forced to cash out his policy" because it would "take away his child's right to life insurance benefits . . . ."  The

---

[2] *DC Mex Holdings LLC v Affordable Land LLC*, unpublished order of the Court of Appeals, entered September 28, 2016 (Docket No. 332439).

trial court then asked DC Mex to correct it if it was wrong. Ultimately, the trial court took the objection under advisement and allowed additional briefing.

After DC Mex and Fuller filed briefs supplementing their previous arguments, the trial court issued an opinion and order denying Fuller's objection to the writ of garnishment. The trial court relied on *Chrysler First Business Credit Corp v Rotenberg*, 789 F Supp 870, 873 (ED Mich, 1992) ("In the Court's view, the Michigan Supreme Court, if asked, would say that MCL 600.4011 and MCR 3.101(G)(1) permit a judgment creditor to garnish the cash value of an insurance policy, whether or not the insured has made a demand for payment."), and *Schenk Boncher & Prasher v Vanderlaan*, unpublished opinion per curiam of the Court of Appeals, issued August 28, 2003 (Docket No. 237690), pp 2-3 ("The plain and broad language of MCL 600.6104(3) allows for the satisfaction of a judgment out of any property, liquidated or unliquidated, that is not exempt."). Using these cases, the trial court held that the cash value of the life insurance policy was subject to garnishment. Further, although, the trial court noted the argument under MCL 500.2207, it never specifically analyzed it.

## II. GARNISHMENT

### A. STANDARD OF REVIEW

Fuller argues that the trial court erred in denying his motion to quash the garnishment because MCL 500.2207 exempts the proceeds of his life insurance policy, including the cash value, from garnishment because it was payable to his daughter. "The proper interpretation and application of a statute is a question of law, which this Court reviews de novo." *Rogers v Wcisel*, 312 Mich App 79, 86; 877 NW2d 169 (2015).

> A court's primary goal when interpreting a statute is to discern legislative intent first by examining the plain language of the statute. Courts construe the words in a statute in light of their ordinary meaning and their context within the statute as a whole. A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage. Statutory provisions must also be read in the context of the entire act. It is presumed that the Legislature was aware of judicial interpretations of the existing law when passing legislation. When statutory language is clear and unambiguous, courts enforce the language as written. A statutory provision is ambiguous only when it irreconcilably conflicts with another provision or is equally susceptible to more than one meaning. [*Lee v Smith*, 310 Mich App 507, 509; 871 NW2d 873 (2015) (citations omitted).]

### B. ANALYSIS

Fuller had a universal life insurance policy with Prudential. As outlined in the policy, Fuller could surrender the policy for its net cash value, which was defined as "the cash value less any contract debt" or zero if the contract was in default. Fuller could also make withdrawals, which would reduce the contract fund and involved charges and fees. The contract fund is explained in the policy as follows:

When you make your first premium payment, the invested premium amount, less any charges due on or before that day, becomes your contract fund. Amounts are added to and subtracted from the contract fund as shown under Adjustments to the Contract Fund in the contract data pages. The contract fund is used to pay charges under this contract and will determine, in part, whether this contract will remain in force or go into default. The contract fund is also used to determine your loan and surrender values, the amount you may withdraw, and the death benefit.

Further, the policy provides that "[t]he cash value at any time is the contract fund less any surrender charge." Fuller had a "Type A" death benefit, which meant that, if "the withdrawal would cause the net amount at risk (see Contract Fund) to increase, we will reduce the basic insurance amount and consequently, your death benefit to offset this increase." "The net amount at risk is used to determine the cost of insurance as described under Adjustments to the Contract Fund. It is equal to the death benefit (see Death Benefit) minus the contract fund." Therefore, a withdrawal would cause the contract fund to decrease and, in turn, would cause the net amount at risk to increase. With respect to the death benefit, the policy provided the following in relevant part: "If this contract has a Type A death benefit, the death benefit on any date is equal to the greater of: (1) the basic insurance amount, and (2) the contract fund before deduction of any monthly charges due on that date, multiplied by the attained age factor that applies."

The policy also made the following relevant specifications: (1) "The net cash value after withdrawal may not be less than or equal to zero after deducting (a) any charges associated with the withdrawal and (b) an amount that we estimate will be sufficient to cover the contract fund deductions for two monthly dates following the date of withdrawal"; (2) "If the cash value is zero or less, the contract is in default"; and (3) "We will pay a benefit to the beneficiary at the insured's death if this contract is in force at the time of that death; that is, if it has not been surrendered and it is not in default past the grace period."

MCL 500.2207(1), the statute governing the exemption at issue on appeal, provides as follows:

It shall be lawful for any husband to insure his life for the benefit of his wife, and for any father to insure his life for the benefit of his children, or of any one or more of them; and in case that any money shall become payable under the insurance, the same shall be payable to the person or persons for whose benefit the insurance was procured, his, her or their representatives or assigns, for his, her or their own use and benefit, free from all claims of the representatives of such husband or father, or of any of his creditors; and any married woman, either in her own name or in the name of any third person as her trustee, may cause to be insured the life of her husband, or of any other person, for any definite period, or for the term of life, and the moneys that may become payable on the contract of insurance, shall be payable to her, her representatives or assigns, free from the claims of the representatives of the husband, or of such other person insured, or of any of his creditors; and in any contract of insurance, it shall be lawful to provide that on the decease of the person or persons for whose benefit it is obtained, before the sum insured shall become payable, the benefit thereof shall accrue to

any other person or persons designated; and such other person or persons shall, on the happening of such contingency, succeed to all the rights and benefits of the deceased beneficiary or beneficiaries of the policy of insurance, notwithstanding he, she or they may not at the time have any such insurable interest as would have enabled him, her or them to obtain a new insurance; *and the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured or to a trustee for the benefit of the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured*; and said exemption shall apply to insurance heretofore or hereafter issued; and shall apply to insurance payable to the above enumerated persons or classes of persons, whether they shall have become entitled thereto as originally designated beneficiaries, by beneficiary designation subsequent to the issuance of the policy, or by assignment (except in case of transfer with intent to defraud creditors). [Emphasis added.]

Essentially, MCL 500.2207(1) provides a list of mandatory and permissive rules separated by semicolons.

The first portion expressly allows for a husband to obtain life insurance for the benefit of his wife or children. Next, the statute provides that any money payable under the life insurance policy is payable free from creditors of the husband's or father's creditors. Third, the statute provides that a married woman may insure her husband's life and that the money that becomes payable under the policy is free from her husband's creditors. Fourth, the statute allows for the designation of a contingent beneficiary. Fifth, the statute provides that the contingent beneficiary has the same rights as the primary beneficiaries even if the contingent beneficiary would not have an insurable interest to obtain a new policy. Sixth, which is the portion of the statute at issue on appeal, the statute provides an exemption from creditors that will be discussed in further detail below. Seventh, the statute provides that the exemption applies to insurance obtained before and after the statute. Finally, the statute provides that, in the absence of a fraudulent transfer, the exemption shall apply whether the beneficiary became entitled to the proceeds through an original designation, subsequent designation, or assignment.

The following portion of MCL 500.2207(1) is specifically at issue: "and the proceeds of any policy of life or endowment insurance, which is payable to the . . . children of the insured . . . , including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured." Fuller argues that his life insurance policy was payable to his daughter; thus, the cash value of his insurance policy was exempt from his creditors. At first blush, the statute appears to clearly exempt the cash value of such an insurance policy. However, a closer reading demonstrates that the text is not so clear. DC Mex argues that MCL 500.2207(1) does not protect the cash value during the insured's lifetime because the statute designates the cash value as a subset of proceeds, which only become relevant upon death, by using the phrase "including the cash value thereof."

MCL 500.2207 has roots dating back to the 1800s. Section 23 of 1869 PA 77 contains substantially similar language and provides:[3]

> It shall be lawful for any husband to insure his life for be benefit of his wife, and for any father to insure his life for the benefit of his children, or of any one or more of them; and in case that any money shall become payable under the insurance, the same shall be payable to the person or persons for whose benefit the insurance was procured, his, her or their representatives or assigns, for his, her or their own use and benefit, free from all claims of the representatives of such husband or father, or of any of his creditors; and any married woman either in her own name or in the name of any third person as her trustee, may cause to be insured the life of her husband, or any other person, for any definite period, or for the term of life, and the moneys that may become payable on the contract of insurance, shall be payable to her, her representatives or assigns, free from the claims of the representatives of the husband, or of such other person insured, or of any of his creditors; and in any contract of insurance, it shall be lawful to provide on the decease of the person for whose benefit it is obtained, before the sum insured shall become payable, the benefit thereof shall accrue to any other person or persons designated; and such other person or persons shall, on the happening of such contingency, become the lawful owner or owners of the policy of insurance, and entitled to enforce the same to the full extent of its terms, notwithstanding he, she or they may not at the time have any insurable interest as would have enabled him, her or them to obtain a new insurance.

Eventually, 1929 CL 12451 added text similar to the relevant portion of MCL 500.2207(1). See *Equitable Life Assurance Society of United States v Hitchcock*, 270 Mich 72, 80; 258 NW 214 (1935). As the *Equitable Life* Court explained,

> The statute . . . was later amended by [1929 CL 12451] so as to add the following clause: 'And the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured.' [*Id.*, quoting 1929 CL 12451.]

The Court further reasoned that "[a] subsequent amendment to the statute, by Act No. 170, Public Acts 1931, extend[ed] the exemption to policies made payable to a trustee for the benefit of the wife, husband, or children of the insured . . . ." *Id.* at 81. With respect to the amendment made by 1929 CL 12451, the Court noted that the "amendment simply clarifies the meaning of the statute as originally worded, so as to specifically exempt all proceeds of the policies

---

[3] In fact, similar language can be traced back to 1848 PA 233. See 1848 PA 233 ("That it shall be lawful for any married woman . . . to cause to be insured for her sole use, the life of her husband or the life of any other person . . . and in case of her surviving her husband or such other person . . . the policy . . . shall be payable to her" free from the insured's "claims of representatives . . . or any of his creditors . . . .").

described in the original statute, whether such proceeds are realized through the surrender of the policy for its cash surrender value, or in any other manner." *Id*. at 80-81.

When the insurance code of 1956 was adopted, the Legislature kept much of the same language intact. In fact, with exception of the addition of "or to a trustee for the benefit of the wife, husband or children of the insured," the language in the relevant portion of MCL 500.2207(1) is identical to the amendment in 1929 CL 12451. Compare MCL 500.2207(1) ("and the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured . . . , including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured . . . ."), with *Equitable Life*, 270 Mich at 80, quoting 1929 CL 12451 ("[a]nd the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured, including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured.").

We recognize that even though the Supreme Court interpreted the meaning of the relevant language in *Equitable Life*, the statement may have been dictum. "This Court is bound by stare decisis to follow the decisions of our Supreme Court." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). However, "[d]ictum is a judicial comment that is not necessary to the decision in the case," and it "does not constitute binding authority." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). "But if a court intentionally addresses and decides an issue that is germane to the controversy in the case, the statement is not dictum even if the issue was not decisive." *Id*.

We conclude that the statement in *Equitable Life*, although not decisive to the case, was germane to the controversy. The policy at issue in *Equitable Life* was a term policy, did not have a cash surrender value, and was originally payable to the estate of the insured. *Equitable Life*, 270 Mich at 74. The insured "was hopelessly insolvent" and attempted to change the beneficiary of the term policy to his two minor sons within a day or two before committing suicide. *Id*. at 75. The issue on appeal in *Equitable Life* was whether a change in beneficiary for a life insurance policy was a fraudulent conveyance. *Id*. at 76. The Court explained that, when there was a fraudulent conveyance, "the proper rule is to limit creditors to a recovery of the cash surrender value of the policy at the time of the transfer." *Id*. at 78.

Subsequently, the Court discussed 1929 CL 12451 and noted, "If the policy in the instant case had a cash surrender value at the time of the transfer, the proceeds of the policy, to the extent of such cash value would not have been exempt from attacks of creditors of the insured under section [1929 CL 12451] . . ." *Id*. at 79. The Court explained the amendment and then stated that "[t]he amendment, however, does not provide that the proceeds of a policy originally payable to the estate of the insured, but later transferred to his wife or children, shall be exempt from the rights of creditors of the insured." *Id*. at 81. The Court went on to conclude that the lack of a cash surrender value precluded a fraudulent conveyance of property within the meaning of the relevant statute:

> The question as to the right of creditors to recover the cash surrender value does not even arise in the instant case, inasmuch as the policy here involved had no cash surrender value whatsoever, and therefore the change of beneficiary executed by the insured while insolvent did not constitute a conveyance of

property in fraud of creditors within the meaning of the fraudulent conveyance act. The two minor children, or a trustee for them, are therefore entitled to the proceeds. [*Id*.]

Therefore, although not necessarily decisive of the ultimate decision, the discussion of 1929 CL 12451 was germane to controversy on appeal, and the Court intentionally explained the meaning of the amendment. See *Pew*, 307 Mich App at 334.

Moreover, even if the statement in *Equitable Life* was dictum, we nevertheless find the statement persuasive.[4]  Again, the relevant portion of MCL 500.2207(1) provides, "and the proceeds of any policy of life or endowment insurance, which is payable to the wife, husband or children of the insured . . . , including the cash value thereof, shall be exempt from execution or liability to any creditor of the insured . . . ." Here, the parties disagree over what part of the text is referred to by "including the cash value thereof." DC Mex argues that the text indicates that the cash value is a subcategory of proceeds, whereas Fuller argues that the cash value refers to the insurance policy.

We conclude that both parties are slightly off point. The phrase "including cash value thereof" refers to the entire subject, i.e., "the proceeds of any policy of life or endowment insurance" that is payable to the insured's children. The relevant portion of MCL 500.2207(1) only refers to proceeds of the life insurance policy—it does not limit the proceeds to the death benefit or limit proceeds in any manner. See *Equitable Life*, 270 Mich at 80-81 (explaining that the text "specifically exempt[s] all proceeds of the policies described in the original statute, *whether such proceeds are realized through the surrender of the policy for its cash surrender value, or in any other manner*") (emphasis added). Such an interpretation is consistent with the intent of protecting life insurance policies for the benefit of the insured's spouse or children.

We acknowledge that this Court has previously explained that "[i]n regards to life insurance contracts, the general public policy is to protect the insurance taken out by a person for the maintenance and support of the person's spouse and children from the claims of creditors *after the person's death*" and that "[e]vidence of the Legislature's intent as to this public policy can be found in MCL 500.2207(1) . . . ." *Baltrusaitis v Cook*, 174 Mich App 180, 182-183; 435 NW2d 417 (1988) (emphasis added).[5]  However, our interpretation is consistent with this intent because it prevents the life insurance policy taken out for the benefit of one's children or spouse from being devalued or from going into default. As explained above, Fuller's policy is considered in default when the cash value is zero, and the death benefit is reduced when the cash value is reduced. Preventing a forced reduction of the death benefit or surrender of the policy is

---

[4] See *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 698 n 3; 671 NW2d 89 (2003) (acknowledging that part of an opinion was dicta but finding the analysis persuasive).

[5] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299; 829 NW2d 353 (2012).

consistent with the Legislature's intent as evidenced by the language in the statute exempting the proceeds including the cash value.

We further note that the relevant portion of MCL 500.2207(1) does not reference the insured's death or contain a requirement that the proceeds be from the death benefit. DC Mex argues that other portions of MCL 500.2207(1) provide timing signals (e.g., "and in case that any money shall become payable under the insurance") and that they should be applied to the exemption portion of the statute at issue on appeal. Although a statute must be read in context, MCL 500.2207(1) is divided into separate parts by semicolons, and modifiers in one part of the list should not be applied to other parts of the list unless the text provides a clear intent for the modifier is to apply throughout. Here, the relevant portion of MCL 500.2207(1) contains no indication that it is modified by the previous parts of the statute.

DC Mex also relies on *In re Parsons*, 161 BR 194 (Bankr WD Mich, 1993), for the proposition that the exemption in MCL 500.2207 protects the children and spouses as beneficiaries rather than the insured, but its reliance is misplaced because that case involved an annuity contract rather than a life insurance policy. See *id*. at 196 ("Subsection (1) of [MCL 500.2207] relates only to insurance policies for husbands and fathers, *and is not relevant to this case*.") (emphasis added). Moreover, protecting the cash value ultimately protects children and spouses as beneficiaries because it preserves the policy and death benefit.

DC Mex further argues that, given the definition of the word "proceeds," proceeds under a life insurance policy only come to fruition when the insured dies. The insurance code does not provide a definition of "proceeds." Thus, this Court may look to a dictionary. *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 218; 880 NW2d 793 (2015). *Merriam-Webster's Collegiate Dictionary* (11th ed) providess the following definition of "proceeds": "**1 :** the total amount brought in <the ~ of a sale> **2 :** the net amount received (as for a check or from an insurance settlement) after deduction of any discount or charges[.]" However, even taking into account the definition of proceeds, the relevant portion of the statute does not indicate that death or any event must occur—it merely refers to proceeds of a life insurance policy payable to the insured's children, including the cash value of the policy. Thus, we conclude that the proceeds at issue were exempt under MCL 500.2207(1).

Lastly, Fuller argues that the change in beneficiary from the trust with his daughter as the sole beneficiary to his daughter was not fraudulent, and DC Mex argues that the change in beneficiary prevents the exemption from applying. With respect to the underlying fraud case, DC Mex filed its complaint in October 2011. Before the lawsuit, the beneficiary of Fuller's life insurance policy was a revocable trust. The proceeds of the trust were to be divided between Fuller's "then living children and deceased children with then-living descendents [sic]." Fuller's only child was his daughter. In 2013, Fuller changed the beneficiary of his life insurance policy to his daughter.

On appeal, DC Mex argues that "[a] Trust is not a protected beneficiary, and it does not matter that his daughter may have been the only beneficiary of the trust." DC Mex further argues that, even assuming the exemption in MCL 500.2207(1) applied, the cash value before the 2013 change in beneficiary was not exempt. However, DC Mex's argument ignores the plain language of MCL 500.2207(1), which states "the proceeds of any policy of life or endowment

-9-

insurance, which is payable to the wife, husband or children of the insured *or to a trustee for the benefit of the wife, husband or children of the insured*, including the cash value thereof, shall be exempt . . . ." (emphasis added). The exemption clearly applies to life insurance policies payable to a trustee for the benefit of the insured's children. MCL 500.2207(1) further states,

> [S]aid exemption shall apply to insurance heretofore or hereafter issued; and shall apply to insurance payable to the above enumerated persons or classes of persons, whether they shall have become entitled thereto as originally designated beneficiaries, *by beneficiary designation subsequent to the issuance of the policy*, or by assignment (except in case of transfer with intent to defraud creditors). [Emphasis added.]

Accordingly, the cash value of the policy was originally exempt, so changing the policy's beneficiary to a beneficiary where the cash value remained exempt did not defraud creditors.

For the foregoing reasons, the cash value of Fuller's life insurance policy was "exempt from execution or liability to any creditor of the insured . . . ." MCL 500.2207(1). The court, therefore, erred in denying the motion to quash the garnishment.

## III. FEES AND COSTS

## A. STANDARD OF REVIEW

Fuller argues that the trial court should have awarded him reasonable attorney fees and expenses incurred during the garnishment proceedings because the primary purpose in obtaining the garnishment was to injure and harass him, and because DC Mex's position lacked arguable legal merit. "A trial court's findings regarding whether a claim or defense was frivolous and whether sanctions may be imposed are reviewed for clear error." *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 585; 887 NW2d 205 (2016). "A finding of the trial court is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made." *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 18; 888 NW2d 267 (2016) (citation and quotation marks omitted).

## B. ANALYSIS

"In general, a party is not entitled to an award of attorney fees and costs unless such an award is expressly authorized by statute or court rule." *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277, 285-286; 882 NW2d 563 (2015). MCR 2.114(F) provides as follows: "In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages." In turn, MCR 2.625(A)(2) provides, "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." Finally, MCL 600.2591 provides that the trial court shall award costs and fees when a civil action or defense was frivolous:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with

-10-

the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made," and "[t]he factual determination by the trial court depends on the particular facts and circumstances of the claim involved." *In re Costs & Attorney Fees*, 250 Mich App 89, 94-95; 645 NW2d 697 (2002).

Below, Fuller summarily argued that the "primary purpose in obtaining the garnishment was to harass and injure" him and that "DC Mex's legal position is devoid of arguable legal merit." Fuller repeats this cursory argument on appeal primarily, relying on the fact that "the law is clear" in this matter. He provides no other explanation on appeal or below for why the primary purpose for requesting garnishment was to harass or injure him. Absent specific facts to the contrary, the record suggests that the primary purpose in obtaining the garnishment was to collect money for the large judgment that remained owing. Moreover, as explained above, the statute is not entirely clear, and DC Mex's position had arguable legal merit. Consequently, the trial court did not clearly err in denying the request for fees and costs.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro