In re ANDERSON INDUSTRIES, INC., d/b/a Anderson Automation, Inc., Debtor.

ANDERSON INDUSTRIES, INC., a New York corporation, d/b/a Anderson Automation, Inc., f/k/a Anderson Pattern, Inc., as debtor-in-possession, and the Official Unsecured Creditors Committee, Plaintiffs,

v.

Harvey G. ANDERSON, Clifford D. Anderson, Jr., Jerry W. Anderson, et al., Defendants.

Bankruptcy No. HG 83 01940. Adv. No. 84 0355.

United States Bankruptcy Court, W.D. Michigan.

Dec. 19, 1985.

■

---

Warner, Norcross & Judd, John D. Tully, Robert H. Skilton, III, F. William McKee, Grand Rapids, Mich., for Anderson Industries, Inc.

Dunn, Schouten & Snoap, Thomas W. Schouten, Wyoming, Mich., for Unsecured Creditors Committee.

Dykema, Gossett, Spencer, Goodrow & Trigg, Nancy Garlock Edmunds, Detroit, Mich., for defendants, Clifford D. Anderson, Jr., Jerry W. Anderson, etc.

Marcus, Vander Ploeg & Ruck, Allan E. Vander Ploeg, Muskegon, Mich., for defendant, Harvey G. Anderson.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

### SUMMARY JUDGMENT—11 U.S.C. § 544(b) UNIFORM FRAUDULENT CONVEYANCE ACT

The debtor-in-possession and its Official Unsecured Creditors' Committee have brought a complaint against the former shareholders of the debtor's corporate predecessor, alleging that the transactions by which those shareholders sold their stock violated the Uniform Fraudulent Conveyance Act, M.S.A. §§ 26.881–26.893 [M.C.L.A. §§ 566.11–566.23] (1982) (the UFCA). The defendants have filed a mo-

tion for summary judgment as permitted by Federal Rule of Civil Procedure 56, incorporated by Bankruptcy Rule 7056.[1]

A party moving for summary judgment must show the absence of any genuine issue of material fact and that he is entitled to a favorable determination as a matter of law. F.R.Civ.P. 56. Although this case is riven by factual issues, the defendants have agreed to accept as true all the plaintiffs' statements of fact for the purposes of this motion only. Therefore, this opinion shall give the facts as pled in the Complaint, with relevant additions as supplied by the defendants' pleadings.

The defendants are former shareholders of Anderson Pattern, Inc., (the "Anderson Family"). The Anderson Family began Anderson Pattern in 1931, and incorporated it under Michigan law in 1946. Anderson Pattern manufactured patterns for metal castings used in the automotive industry. Over the years Anderson Pattern acquired two wholly owned subsidiaries, Anderson Automation, Inc. and Anderson Industries, Inc., which operated in related fields of enterprise.

In 1979, the debtor, then known as R.Q. Anderson Acquisition Company, was incorporated by R. Quintus Anderson (no relation to the Anderson Family), Harvey Anderson (President of Anderson Pattern) and an investment firm. Their purpose was to acquire Anderson Pattern. The debtor was and is a New York corporation.

The debtor, Anderson Acquisition, entered into an agreement on August 3, 1979, to purchase all the shares of Anderson Pattern from the Anderson Family, except for a portion of those shares held by Harvey Anderson.[2] Of the outstanding 1,000 voting and 27,165 non-voting Anderson shares, Anderson Acquisition agreed to buy 801 voting and 25,874 non-voting shares, for a price of $5,682,585. (Defendants' Exhibit E, page 4) On December 4, 1978, the firm of Hammond, Kennedy and Company, Inc., had appraised the fair market value of all the outstanding stock, voting and non-voting together, of Anderson at $5,750,000, with each share of voting or non-voting stock valued at $204.15. (Defendant's Exhibit G)

The change in the ownership of Anderson Pattern was effected on August 31, 1979, by a series of virtually simultaneous transactions. The debtor, R.Q. Anderson Acquisition, closed the stock transfer. (Defendants' Exhibit C, pages 8–9) To fund this purchase the debtor received on that day the sum of $1,705,000 from the sale of stock and subordinated notes. (Complaint, paragraph 18) To raise the rest of the cash the new shareholder of Anderson Pattern, R.Q. Anderson Acquisition, authorized Anderson Pattern to borrow $4,600,000 from Comerica Bank[3] (Defendants' Brief,

1. The defendants have alternatively asked for dismissal under Federal Rule of Civil Procedure 12(b)(6), incorporated by Bankruptcy Rule 7012(b). However, as the parties have submitted supporting affidavits which the Court has not excluded, F.R.Civ.P. 12(b) directs that the motion shall be treated as one for summary judgment under F.R.Civ.P. 56, incorporated by B.R. 7056.

2. At the time there were 1000 shares of voting stock and 27,165 shares of non-voting stock outstanding. Of these, Harvey Anderson owned 200 voting shares and 2,350 non-voting shares. Harvey Anderson retained 199 of the voting shares, and an uncertain number of the non-voting shares. The purchase agreement originally indicated that Harvey Anderson retained 1409 non-voting shares. That figure was changed by the parties to either 1059 or 1259 shares. (The reproduction furnished to the Court is rather

unclear.) Paragraph 33 of the Complaint, however, which Defendant, Harvey Anderson, admitted was true in his Answer, indicates that he tendered only 741 non-voting shares to the debtor. If he retained more, what became of the difference? The affidavit of Harvey Anderson indicates that the transactions of August 31, 1979, left him without Anderson Pattern shares. For the purposes of this motion, the Court shall assume that the debtor received the lowest number of shares possible in either transaction. That is, the Court shall assume Harvey Anderson retained 1409 non-voting shares and in his separate transaction tendered only 741 non-voting shares.

3. There is a discrepancy as to how much was borrowed; the Complaint alleges $3.9 million, the defendants state $4.6 million. As the defendants' figure is more favorable to the plaintiffs the Court feels compelled to use it.

page 2), and then to in turn lend that sum to Anderson Acquisition. (Defendants' Exhibit B, page 3). The debtor admits that it gave no consideration to Anderson Pattern for this loan. (Complaint, paragraph 20)

In a separate transaction effected that same day, August 31, 1979, the debtor issued to defendant, Harvey G. Anderson, a subordinated note for $140,000 and 24,500 shares of the debtor's common stock in exchange for Harvey Anderson's payment of $62,000 and his delivery of 199 voting and 741 non-voting Anderson Pattern shares.[4] (Complaint, paragraph 33) The debtor then used the loan proceeds and the other cash raised to pay the Anderson family $5,682,585. Of this amount $500,000 was escrowed as security for any breach of the warranties the family made in the stock purchase agreement.[5] (Complaint, paragraph 21) The escrowed funds were paid to the family on February 6, 1981, less $70,000 paid to the Debtor for breach of warranties by the Anderson Family.[6] (Complaint, paragraph 28) Sometime thereafter, debtor R.Q. Anderson Acquisition, Inc., changed its name to Anderson Industries, Inc., d/b/a Anderson Automation, Inc.

To add to the welter of Andersons, Anderson Technology Corporation, a corporation controlled by Harvey G. Anderson, entered the picture. (Affidavit of Harvey G. Anderson, Complaint, paragraph 34) Harvey G. Anderson assigned his $140,000 subordinated note to Anderson Technology. Anderson Technology in turn purchased the machine product division from the debtor. Anderson Technology paid $560,000 to the debtor, executed and delivered a $46,000 promissory note to the debtor, and surrendered the $140,000 note of the debtor that it had received from Harvey G. Anderson. (Affidavit of Harvey G. Anderson, page 3) On February 6, 1981, the

Debtor credited this note with its full face amount as partial payment for the acquisition. (Complaint, paragraph 34)

On July 29, 1983, the debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code. Subsequently, the debtor and its Official Unsecured Creditors' Committee brought this related proceeding in the Bankruptcy Court. All the parties have consented to the Bankruptcy Court's entry of a final order in this adversary proceeding. (Transcript, at pages 21–22)

Relying upon the authority granted by 11 U.S.C. § 544(b) to avoid any transfer voidable under applicable law, the plaintiffs allege violations of M.S.A. §§ 26.884 and 26.885, [M.C.L.A. §§ 566.14 and 566.15] Section 26.884 provides that:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Section 26.885 provides that:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

The plaintiffs allege that the payments to the Anderson Family and to Harvey G. Anderson in effect amounted to a fraudulent transfer to them from Anderson Pattern or from the debtor. The defendants

---

**4.** See footnote 2, *supra.*

**5.** The Court would note that the $1,705,000 in proceeds from the sale of stock and notes, plus the $3,900,000 given by Anderson Pattern, together with the $62,000 paid by Harvey G. Anderson all adds up to only $5,567,000, which is $115,585 short of the $5,682,585 which the debt-

or claims to have paid the Anderson Family on August 31, 1979. The debtor does not make it clear how it raised the difference.

**6.** The defendants have not raised the issue as to whether the purchase price was thereby reduced by $70,000 to $5,612,585.

respond that the fraudulent conveyance law is inapplicable, that there was no transfer from Anderson Pattern to the defendants, and that any transfers from the debtor were made for fair consideration.

■ The fraudulent conveyance law is inapplicable, the defendants maintain, because it is aimed at situations with a potential for self-dealing, such as intrafamily transfers, and not at a leveraged-buy out. See *Cate v. Nicely (In re Knox Kreations)*, 474 F.Supp. 567 (E.D.Tenn.1979), *aff'd in part, rev'd in part*, 656 F.2d 230 (6th Cir. 1981). Although that may be true in Tennessee, in Michigan, however, a conveyance includes "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property," M.S.A. § 26.881, [M.C.L.A. § 566.11] and may even include the changing of a beneficiary on a life insurance policy. *Equitable Life Assurance Society v. Hitchcock*, 270 Mich. 72, 76–77, 258 N.W. 214 (1935). The defendants challenge the wisdom of a statute so broad that it would allow creditors to set aside a leveraged-buyout, a method of sale increasingly popular in the marketplace. See Cuff, *Leveraged-Buyout Empires*, N.Y. Times, August 5, 1985, at 21, col. 3 (national edition); *Executives Plan $3.6 Billion Bid For R.H. Macy, Id.*, October 22, 1985, at 1, col. 2 (national edition). It is true that courts have recognized "that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers," and that statutes should not be so broadly construed so as to lead to absurd results. *Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). Taking the UFCA as a whole, its clear purpose is to allow creditors to set aside any conveyance made by a debtor in which the debtor received far less than he gave, and which rendered the debtor insolvent and unable to satisfy other creditors. Allegedly, this is what happened to Anderson Industries. The court is aware that a ruling that the UFCA covers leveraged-buyouts could set a precedent for the recovery of any size amount paid to any number of

shareholders should the leveraged-buyout of a large publicly held corporation cause that corporation's insolvency and failure. Yet that precedent has already been set in a case not exactly on point, *Spanier v. United States Fidelity*, 127 Ariz. 589, 623 P.2d 19 (1981). And although such an operation would be difficult, the court cannot characterize that as a patently absurd result. If this holding is too broad in the light of the present marketplace, it is the legislature, not the courts, that must narrow the statute.

■ Alternatively, the defendants assert that § 26.884 [M.C.L.A. § 566.14] is inapplicable because under it only creditors existing at the time of the conveyance may recover. The defendants argue that those creditors identified by the plaintiffs (Plaintiffs' Answers to Defendants' First Interrogatories, Answer Two) were either creditors of Anderson Industries, or had minimal claims against Anderson Pattern. The debtor-in-possession, however, has the powers of a trustee, which include the power to

> avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title.

11 U.S.C. § 544(b). Section 544(b) creates the requisite creditor in the trustee or debtor-in-possession, so the number of actual creditors, or the amount and validity of their claims are all irrelevant.

■ The defendants also argue that § 26.885 [M.C.L.A. § 566.15] does not apply, at least with respect to any conveyance from Anderson Pattern, because Anderson Pattern no long exists. Both parties agree that Anderson Pattern was merged into Anderson Acquisition, and that the merger obliterated Anderson Pattern. They do not state how a Michigan corporation was merged into a New York corporation. Nor have they informed the Court to what degree Anderson Acquisition assumed the lia-

bilities of Anderson Pattern. The court, therefore, must assume a complete assumption by Anderson Acquisition of Anderson Pattern's liabilities. Therefore Anderson Pattern's creditors became Anderson Acquisition's, may recover from it, and may set aside any fraudulent conveyances it made.

The defendants have two fall back positions: that there was no transfer from Anderson Pattern to the defendants, and that any transfers from the debtor to the defendants were made for fair consideration. In the light of the above discussion, the question of whether there was a transfer from Anderson Pattern to the defendants is irrelevant. If the transfer from the debtor to the defendants was without fair consideration that would be sufficient, given insolvency and the fulfillment of the statute's other requirements, to set the transfer aside under the UFCA.

The question of fair consideration is perhaps the most difficult presented by this motion for summary judgment. The UFCA defines fair consideration as "[w]hen in exchange for ... property, or obligations, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied." M.S.A. § 26.883(a) [M.C.L.A. § 566.13(a)]. A determination of what constitutes fair consideration must be made from the creditors' standpoint and depends upon whether the conveyance renders the debtor execution proof. *Dunn v. Minnema,* 323 Mich. 687, 693, 36 N.W.2d 182 (1949), quoting *McCaslin v. Schouten,* 294 Mich. 180, 186–187, 292 N.W. 696 (1940). The debtor gave the defendants $5,682,585[7] in cash, a note for $140,000, and 24,500 shares of stock the debtor was selling for ten dollars each. (Defendants' Exhibit C, page 4). In exchange, the Defendants, taken together, gave the debtor $62,000 in cash and 1000 shares of voting and 26,615 shares of nonvoting Anderson Pattern stock, valued as of December 4, 1978, at $204.15 each.[8] Depending on exactly how many shares were actually exchanged, the defendants gave the debtor a total consideration worth somewhere between $5,699,602.25 and $5,812,000, in return for the debtor's conveyances worth a total of $6,067,585. Were these facts established at trial, the court believes it could reasonably conclude that the defendants gave a fair equivalent of what they received, and that it did not render the debtor execution proof. However, this is summary judgment and the Court believes it cannot now reach such a conclusion. The court hesitates because a sizeable portion of the consideration consists of stock in Anderson Pattern, a firm the parties have stipulated was either then insolvent or rendered insolvent by these transactions.[9] Of course, part of what the defendants received was stock in another insolvent firm, Anderson Acquisition, but even discounting the purchase price by $245,000, the debtor may then have paid $5,822,585 in return for $62,000 in cash and all the outstanding stock of an insolvent corporation. Admittedly, this was a bargained for exchange reached through arms length negotiations in which the purchaser was presumably the most informed party as to the extent of insolvency and its effect on the stock price, as these were logical results of the purchaser's financing of the purchase. Extreme debt alone would not make this conveyance fraudulent. *Otte v. Landy,* 143 F.Supp. 893 (E.D.Mich.1956); 256 F.2d 112 (6th Cir.1958). Further it is very possible that the stock of an insolvent corporation has value, perhaps not less than if the corporation were solvent, if the corporation's expected future earnings and performance are taken into account. Therefore, even if the evidence at trial

7. See note 6, *supra.*

8. Including the note taken at face value.

9. The Court believes itself bound by the parties' stipulation as to insolvency. The Court would note, however, that it is not at all clear how either corporation could be insolvent. If Anderson Pattern was worth at least $5.5 million, and $4.6 million was borrowed on that asset, and another $1.6 million was invested, and about $5.5 million was paid out, then it would appear that there should still be about $1.6 million in equity in the firm.

928

were to prove the corporation's insolvency that would not necessarily lead to the conclusion that the stock was worthless. But given that this is a motion for summary judgment, that the moving party has the burden of proof, that the record must be looked at in the light most favorable to the non-moving party, and that the parties have stipulated that the debtor and Anderson Pattern were both insolvent, this raises a genuine question of material fact, the effect of that insolvency, if any, on the worth of the stock, which precludes summary judgment.