**In re C.H. BUTCHER, Jr., Debtor.**

**James R. MARTIN, Trustee, Plaintiff,**

**v.**

**Hazel PHILLIPS, Defendant.**

**Bankruptcy No. 3–83–01008.
Adv. No. 3–85–1104.**

United States Bankruptcy Court,
E.D. Tennessee.

March 6, 1986.

See also, 43 B.R. 513, 47 B.R. 813, 57 B.R. 101.

Neal S. Melnick, Baltimore, Md., for plaintiff.

Donald B. Roe, Oak Ridge, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

The trustee seeks to avoid as a fraudulent transfer the payment of $8,833.33 to the defendant Phillips. 11 U.S.C.A. §§ 544(b),[1] 548 [2] (West 1979).[3] The facts are not in dispute. Pertinent documents have been stipulated.

### I

On March 12, 1971, Beckham L. Phillips, now deceased, and the defendant Hazel Phillips, sold to East Tennessee Realty, Inc., a 6-acre tract in Anderson County, Tennessee, for the sum of $130,000.00. A down payment of $30,000.00 was made and a deed of trust for $100,000.00 was executed in the subject property to secure the balance.[4] The note was payable in 12 annual installments of $8,833.33 each, plus interest, on the 15th day of March each year until fully paid. The down payment was made by East Tennessee Realty. Thereafter, all annual payments were made by the debtor C.H. Butcher, Jr. It is the last annual payment made by Butcher on March 21, 1983, in the amount of $8,833.33 that the trustee seeks to recover.

Upon receipt of the payment Hazel Phillips credited this amount to the indebtedness of East Tennessee Realty secured by the deed of trust on the Anderson County property. The payment was made by Check No. 3228, dated March 21, 1983, drawn on the account of C.H. Butcher, Jr., at the City & County Bank of Knox County. Also, since this payment paid the indebtedness in full Mrs. Phillips executed a release deed of the mortgage indebtedness. On that date the property was actually

---

1. (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

2. (a) The trustee may avoid any transfer of an interest of an debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

.  .  .  .  .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

3. This case was commenced prior to the passage and effective dates of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Reference to Code sections are to the Code as it existed prior to passage of the Act.

4. The deed of trust was executed by Gary Rutherford, president of East Tennessee Realty. At that time stock ownership in the corporation was held 75% by C.H. Butcher, Jr., and 25% by Rutherford.

titled in the name of Desh Investment Corporation.[5] At no time had the property been titled in the name of the debtor, C.H. Butcher, Jr.

Plaintiff has established that the debtor C.H. Butcher, Jr., was insolvent on December 31, 1982, having a negative net worth of $34,318,484.00. Ex. H. Further, plaintiff has established that there was no significant improvement in Butcher's financial condition between December 31, 1982, and the date of the transfer.[6] The determination of insolvency under the Code is a balance sheet test.[7]

## II

The facts and law controlling this proceeding mandate the avoidance of the transfer. No value was received by the debtor or the debtor's estate in exchange for the payment. The debt to which the payment was applied was not a legal obligation of the debtor but was a legal obligation of East Tennessee Realty. The debtor did not co-sign or guarantee the obligation. If the transfer had not occurred and East Tennessee Realty had not made the payment, defendant's remedies would have been against East Tennessee Realty and the property which secured the debt—not against the debtor.

The term "value" as applied to § 548 is defined in § 548(d)(2)(A).[8] It is clear that this transfer does not fall within the definition.

■ The rationale for avoiding prepetition transfers under § 548 is to preserve the assets of the estate. Thus, "analysis of an allegedly fraudulent transfer must be directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost." *Meister v. Jamison* (*In re Jamison*), 21 B.R. 380, 382 (Bankr.D.Conn. 1982).

"Transfers made to benefit third parties are clearly not made for a 'fair' consideration or for value unless the debtor is also benefitted." L. King, 4 *Collier on Bankruptcy* ¶ 548.09 at 106 (15th ed. 1985); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991–92 (2nd Cir.1981) ("if the giving of the consideration to the third person ... confers an economic benefit upon the debtor, then the debtor's net worth has been preserved ... provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up").

■ The trustee has established that the subject transfer conferred no economic benefit upon the debtor. The transfer operated *solely* to benefit third parties, i.e. East Tennessee Realty and Desh Investment, the former by the payment of its debt and the latter by the release of the lien on the real estate. The debtor did not receive any value as a result of the release of the deed of trust. He did not hold title to the property, nor was there any evidence that he held any interest in Desh Investment at the time of the transfer in March 1983 (or at any time before or after the transfer). In addition, the proof showed that in March 1979 Butcher conveyed his stock in East Tennessee Realty to a trust for the benefit of his son. At the time of

---

5. After the transfer from the Phillips to East Tennessee Realty in 1971, the property had been transferred several times—to Bull Run Oil Company and its successor, Petroleum Marketeers, Inc.; to SE Properties; to R.L. Ayers; to D.F.P. Sales Company, Inc.; and finally, in December 1981, to Desh Investment Corporation.

6. Section 101(26) of the Code defines "insolvent" to mean "with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property...." 11 U.S.C.A. § 101(26) (West 1979).

7. S.Rep. No. 989, 95th Cong., 2d Sess. 25, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5811.

8. Section 548(d)(2)(A) provides that " 'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor...." 11 U.S.C.A. § 548(d)(2)(A) (West 1979).

the subject transfer in March 1983, then, he held no interest in East Tennessee Realty. Thus, payment of the corporation's debt could not, and did not confer any economic benefit upon the debtor.

Since the transfer operated exclusively to benefit third parties without conferring any economic benefit upon the debtor, the trustee is entitled to avoid the transfer under § 548(a)(2)(A). Judgment for the trustee will be entered in the amount of $8,833.33.