In the Matter of the OHIO CORRUGATING COMPANY, Debtor.

The OHIO CORRUGATING COMPANY, by its OFFICIAL CREDITORS COMMITTEE, Plaintiff,

v.

SECURITY PACIFIC BUSINESS CREDIT, INC., et al., Defendants.

Bankruptcy No. B85–00900–Y. Adv. No. 86–0003.

United States Bankruptcy Court, N.D. Ohio.

March 11, 1987.

See also, Bkrtcy., 59 B.R. 11.

**922**

Mark Schlachet, Cleveland, Ohio, for The Official Creditors Committee.

Dixon Rich, Pittsburgh, Pa., for DPAC II, Inc., and Malcolm Sheppard.

Frank R. Osborne, and Michael E. Elliot, Mark A. Rock, Cleveland, Ohio, Mary Beth Houser, Youngstown, Ohio, Michael A. Snyder, Pittsburgh, Pa., George C. Limbert, Youngstown, Ohio, for Security Pacific Business Credit, Inc.

Frederick S. Coombs, III, Youngstown, Ohio, for third-party defendants.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the Motions for Summary Judgment filed by Defendants DPAC, INC. ("DPAC II"), and MALCOLM K. SHEPPARD ("SHEPPARD") in the above-captioned adversary proceeding.

## PROCEDURAL POSTURE

THE OHIO CORRUGATING COMPANY filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on September 30, 1985. Thereafter, but prior to January 13, 1986, THE OFFICIAL CREDITORS COMMITTEE made a demand upon OHIO CORRUGATING to take action to reverse a transaction claimed to have been fraudulent as to the creditors of Debtor. No such action was taken by Debtor. On January 13, 1986, the OFFICIAL CREDITORS COMMITTEE filed a Complaint pursuant to the fraudulent conveyance provisions of 11 U.S.C. Sec. 548 and O.R.C. Sec. 1336.01, *et seq.* [1] Named as Defendants were SECURITY PACIFIC BUSINESS CREDIT, INC., the sole secured creditor of OHIO CORRUGATING; DPAC II, the sole shareholder of OHIO CORRUGATING; and SHEPPARD, a majority shareholder of DPAC II and President and Chief Operating Officer of OHIO CORRUGATING. Answers were filed by all three Defendants. In addition, DPAC II and SHEPPARD filed Crossclaims against SECURITY PACIFIC. SECURITY PACIFIC filed Counterclaims and Crossclaims against a number of new-party defendants and Crossclaims against DPAC II and SHEPPARD.

On April 11, 1986, the Court granted leave to OHIO CORRUGATING to intervene as a defendant in this cause on the grounds that the position of Plaintiff, OHIO CORRUGATING, by and through its OFFICIAL CREDITORS COMMITTEE, may be different from the position of THE OHIO CORRUGATING COMPANY as Debtor-in-Possession. Upon further consideration, the Court determines that leave was improvidently granted in that regard. The Order granting such leave will be rescinded, and by entry of the Order accompanying this Opinion, THE OHIO CORRUGATING COMPANY shall be dismissed as a defendant in these proceedings.

---

**1.** To maintain the distinction herein, "Plaintiff" shall refer to the action brought by The Official Creditors Committee in the name of Debtor-in-Possession after Debtor-in-Possession declined to bring the action on demand by The Official Creditors Committee. "OHIO CORRUGATING" shall refer to the Debtor-in-Possession.

Subsequent to the filing of Answers in this cause, Plaintiff and SECURITY PACIFIC entered into a settlement agreement and SECURITY PACIFIC was dismissed from this adversary proceeding. SECURITY PACIFIC's Crossclaims and Counterclaims against the new-party defendants and against DPAC II and SHEPPARD were also dismissed. The only remaining Defendants are DPAC II and SHEPPARD.

### FACTS

The operative facts in this cause revolve around the acquisition of all the stock in OHIO CORRUGATING by DPAC II through the vehicle of a leveraged buyout. In August, 1984, DPAC, INC. ("DPAC I"), was formed with SHEPPARD as its sole shareholder. Its actual purpose was to serve as a holding company for the stock in OHIO CORRUGATING to be purchased from the former shareholders.

On November 14, 1984, DPAC I and OHIO CORRUGATING, as co-signers, entered into a "Loan and Security Agreement" with SECURITY PACIFIC whereby SECURITY PACIFIC agreed to loan to DPAC I up to One Million, Four Hundred Seventy-Five & 00/100 Dollars ($1,475,000.00) in exchange for which SECURITY PACIFIC would be granted a first-position security interest in all of the unencumbered assets of OHIO CORRUGATING. The loan proceeds were used by DPAC I to acquire the stock in OHIO CORRUGATING from the former shareholders.

Subsequent to the loan transaction, a new holding company by the name of GEOROMAC, INC., was formed. Through an exchange of its stock for all the outstanding stock of DPAC I, GEOROMAC became the sole shareholder in DPAC I, and SHEPPARD became the majority shareholder of GEOROMAC.

On December 6, 1984, GEOROMAC received all of the assets and liabilities of DPAC I, its 100–percent-owned subsidiary, except for the stock of OHIO CORRUGATING and the One Million, Three Hundred Thousand, Two Hundred & 00/100 Dollars ($1,300,200.00) which DPAC I owed to SE-CURITY PACIFIC. On the same day, a joint agreement and plan of merger was declared. Pursuant to that agreement, DPAC I received its own shares of stock from GEOROMAC in exchange for which it transferred the shares of stock in OHIO CORRUGATING to GEOROMAC. DPAC I then merged downstream into OHIO CORRUGATING to achieve the merger of the One Million, Three Hundred Thousand, Two Hundred & 00/100 Dollars ($1,300,200.00) borrowed from SECURITY PACIFIC with the assets of OHIO CORRUGATING which secured the debt. DPAC I ceased to exist and GEOROMAC changed its name to DPAC, INC. ("DPAC II"). The result of all of these transactions was that GEOROMAC became the sole shareholder of OHIO CORRUGATING and OHIO CORRUGATING owed SECURITY PACIFIC the sum of One Million, Three Hundred Thousand, Two Hundred & 00/100 Dollars ($1,300,200.00), secured by a lien on all of the assets of OHIO CORRUGATING.

OHIO CORRUGATING filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on September 30, 1985. Early in the case, it became apparent that the case would proceed as a liquidating Chapter 11 case. Early in the course of the proceedings, substantially all of the assets of OHIO CORRUGATING were sold, with the corresponding reduction in the debt owed to SECURITY PACIFIC.

The Complaint in this cause was filed on January 15, 1986, by THE CREDITORS COMMITTEE for the benefit of OHIO CORRUGATING and its creditors. The Complaint contains three (3) Counts. The First relies upon 11 U.S.C. Sec. 548, the fraudulent conveyance provision of the Bankruptcy Code. Count One alleges that the incurring of the loan obligation and the granting of a security interest in all of its assets to SECURITY PACIFIC by OHIO CORRUGATING constitutes an actual or constructive fraudulent conveyance under Sec. 548. Count Two is brought pursuant to 11 U.S.C. Sec. 544 and Chapter 1336 of The Ohio Revised Code and alleges that the above-described transactions constitute an

actual or constructive fraudulent conveyance under applicable Ohio law. Count Three, brought pursuant to 11 U.S.C. Sec. 510, seeks the subordination of SECURITY PACIFIC's claim against the estate to a position inferior to that held by the unsecured creditors.

As a whole, the Complaint seeks a determination that the transfer of the security interest to SECURITY PACIFIC and the incurring of the obligation by OHIO CORRUGATING were fraudulent as to unsecured creditors; that the transfer and obligation be avoided; that the claim of SECURITY PACIFIC be subordinated to the claims of the unsecured creditors; and that judgment be had against SHEPPARD to the extent that the assets of OHIO CORRUGATING do not fully satisfy the claims of unsecured creditors.

After the filing of the Complaint, SECURITY PACIFIC and THE COMMITTEE entered into a settlement agreement which was approved by Order of this Court entered on September 26, 1986. The agreement provided that any outstanding claims and security interests held by SECURITY PACIFIC against the estate would be settled upon OHIO CORRUGATING's payment of Fifty Thousand & 00/100 Dollars ($50,000.00) to SECURITY PACIFIC. Upon payment of this amount, SECURITY PACIFIC was to pay to the estate the amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) as a compromise and settlement of the claims made by THE COMMITTEE on behalf of OHIO CORRUGATING against SECURITY PACIFIC, in exchange for which the adversary action would be dismissed as against SECURITY PACIFIC. The various Cross-claims and Counterclaims to which SECURITY PACIFIC was a party would also be dismissed. As a result of the Order entered by the Court on September 26, 1986, and the various agreed entries accompanying it, all parties other than Plaintiff, DPAC II, and SHEPPARD have been dismissed from these proceedings.

## DISCUSSION

Motions for Summary Judgment have been filed by both DPAC II and SHEPPARD. The only difference between the two is that DPAC II argues the Complaint alleges no cause of action against it since it was not a party to the transaction complained of and was not in existence at the time of the events complained of, while SHEPPARD argues that the Complaint fails to allege a cause of action against him since it fails to allege that he acted in an individual capacity and apart from his official positions with THE OHIO CORRUGATING COMPANY and DPAC I.

11 U.S.C. Sec. 550 holds the answer to DPAC II's argument that it is entitled to judgment since it was not in existence at the time of the acts complained of. That Section provides:

a) Except as otherwise provided in this section, to the extent that a transfer is avoided under Sec. 544, 545, 547, 548, 549, 553(b), or 724(a) of this Title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—

1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

2) any immediate or mediate transferee of such initial transferee.

Under the explicit provisions of Sec. 550, a money judgment may be awarded not only against the transferee of fraudulently conveyed property but also against any entity for whose benefit the transfer was made. The Code does not restrict recovery to those persons or entities receiving the property. 11 U.S.C. Sec. 550(a); *Pereira v. Checkmate Communications Co., Inc.*, (*In re Checkmate Stereo & Electronics, Ltd.*), 9 B.R. 585, 620 (Bankr.E.D.N.Y.1981). Thus, as a matter of law, judgment may be had against DPAC II even if it was not in existence at the time of the acts complained of. If, as a factual matter, Plaintiff can prove that DPAC II was an entity for whose benefit the transfer was made, recovery may be had under the terms of Sec.

550(a), provided the remaining elements of Sec. 548 are satisfied.

■ Sec. 550(a) is equally applicable to SHEPPARD's arguments that no cause of action is stated against him since he was merely acting as an officer or shareholder of DPAC I, DPAC II, and OHIO CORRUGATING. The Court holds that recovery may likewise be had against SHEPPARD if he is, in fact, an entity for whose benefit the transfer was made, provided the remaining elements of the statute are satisfied.

■ The Court notes one caveat with respect to the potential individual liability of SHEPPARD. It is well-established that merely naming a defendant in his or her individual capacity is not sufficient to establish his or her liability separate and apart from that of the corporate entities involved in any given case. *Tyler v. Capitol Chemical Industries, Inc., (In re Metro Paper, Inc.)*, 18 B.R. 56 (Bankr.D.D.C. 1982). Plaintiff must prove that SHEPPARD acted other than in the normal course of business of DPAC I, DPAC II, or OHIO CORRUGATING and must submit appropriate evidence as to SHEPPARD's individual liability. At this point, however, the Court cannot hold that SHEPPARD is entitled to judgment as a matter of law since these points create material issues of fact remaining to be determined.

■ DPAC II and SHEPPARD argue that 11 U.S.C. Sec. 548 and Ohio Revised Code, Sec. 1336.01, *et seq.*, are inapplicable to leveraged buyout situations because the law of fraudulent conveyances is aimed only at situations where a debtor engages in transfers of property either as a means of preferring some creditors over others or as a means of placing assets where insiders can reach them but where outsiders cannot. According to DPAC II and SHEPPARD, it was not intended that fraudulent conveyance law be used to avoid arms-length transactions such as leveraged buyouts. To allow the fraudulent conveyance laws to be used in such a manner, say DPAC II and SHEPPARD, would be to jeopardize all leveraged buyouts and would have the effect of making a lender financing a leveraged buyout transaction the guarantor of the subsequent economic success of the acquired business.

The Court disagrees. 11 U.S.C. Sec. 548 extends to any "transfer", defined in 11 U.S.C. Sec. 101(48) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest...." Likewise, O.R.C. Sec. 1336.04 and Sec. 1336.07 apply to any "conveyance," defined in O.R.C. Sec. 1336.-01(B) as "... every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." A leveraged buyout, by definition, involves a transfer or conveyance as those terms are used in the Bankruptcy Code and in the Uniform Fraudulent Conveyance Act as adopted in Ohio. There is nothing that would seem to indicate that a leveraged buyout transaction is immune to avoidance under the law simply because it is innovative and increasingly being used in the business world as an acquisition vehicle. If it had been intended that fraudulent conveyance law be applied only to situations where the debtor attempts to place his property out of the reach of creditors, the constructive fraud provisions would have been unnecessary since, theoretically, the actual fraud provisions would cover those situations.

Our holding that fraudulent conveyance law may be utilized to avoid leveraged buyouts is in accord with the decisions of courts which have specifically considered the issue. In *Anderson Industries, Inc. v. Anderson, (In re Anderson Industries, Inc.)*, 55 B.R. 922 (Bankr.W.D.Mi.1985), the debtor-in-possession and its official unsecured creditors committee brought suit against the former shareholders of the debtor's corporate predecessor, alleging that the transactions by which those shareholders sold their stock violated Michigan's Uniform Fraudulent Conveyance Act. The defendants there argued that the fraudu-

lent conveyance law was inapplicable because it was aimed only at situations with a potential for self-dealing, such as intra-family transfers, and not at transactions such as leveraged buyouts. In determining that the Michigan Uniform Fraudulent Conveyance Act could be applied to leveraged buyouts, the court stated:

It is true that courts have recognized 'that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers,' and that statutes should not be so broadly construed as to lead to absurd results. Taking the UFCA as a whole, its clear purpose is to allow creditors to set aside any conveyance made by a debtor in which the debtor received far less than he gave and which rendered the debtor insolvent and unable to satisfy other creditors. Allegedly, this is what happened to Anderson Industries. The court is aware that a ruling that the UFCA covers leveraged buyouts could set a precedent for the recovery of any size amount paid to any number of shareholders should the leveraged buyout of a large publicly held corporation caused that corporation's insolvency and failure. Yet, that precedent has already been set in a case not exactly on point ... and although such an operation would be difficult, the court cannot characterize that as a patently absurd result. If this holding is too broad in the light of the present marketplace, it is the legislature, not the courts, that must narrow the statute. (citations omitted).

*Anderson*, 55 B.R. at 926.

The Third Circuit Court of Appeals recently considered the applicability of the Pennsylvania UFCA to leveraged buyouts. In *U.S. v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), the Court of Appeals considered whether the lower court had erred in applying the UFCA to a leveraged buyout. In concluding that the lower court had not erred in this regard, the Third Circuit stated:

The Act's broad language ... extends to any 'conveyance' which is defined as 'every payment of money ... and also the creation of any lien or encumberance....' This broad sweep does not justify exclusion of a particular transaction such as a leveraged buyout simply because it is innovative or complicated. If the UFCA is not to be applied to leveraged buyouts, it should be for the state legislatures, not the courts, to decide. (Citations omitted).

*Tabor*, 803 F.2d at 1297.

These decisions construe only the Uniform Fraudulent Conveyance Act as adopted by Pennsylvania and Michigan (and which Ohio adopted as Ohio Revised Code Chapter 1336 in 1961). They do not address Section 548 of the Bankruptcy Code. Many of the principles underlying the UFCA were incorporated into the Bankruptcy Code. *See generally*, 4 *Collier on Bankruptcy*, Sec. 548.01, 548–9 to 548–22 (15th Ed.1981). The analysis used by the courts in the decisions cited above have equal applicability to cases brought under Sec. 548 of the Bankruptcy Code and under Chapter 1336 of The Ohio Revised Code.

The Court determines that, as a matter of law, Sec. 548 of the Bankruptcy Code and Chapter 1336 of The Ohio Revised Code may be applied to leveraged buyouts.

■ 11 U.S.C. Sec. 548(a)(2) permits a transfer or obligation to be avoided if the debtor received less than a reasonably equivalent value in exchange for the transfer or obligation and the debtor was either insolvent on the date the transfer/obligation was made or was rendered insolvent as a result of the transfer/obligation. The plaintiff must establish both of these elements in order to prove a case under Sec. 548(a)(2). *Emerald Hills Country Club, Inc., v. Hollywood, Inc., (In re Emerald Hills Country Club, Inc.)*, 32 B.R. 408 (Bankr.S.D.Fla.1983); *Kleinfeld v. Nacol, (In re Nacol )*, 36 B.R. 566 (Bankr.M.D.Fla. 1983); *Campbell v. Thames, (In re Thames )*, 21 B.R. 704 (Bankr.D.S.C.1981).

Ohio's constructive fraud provision is found at Sec. 1336.04, O.R.C. It basically requires the same type of showing as is

required under the Bankruptcy Code's constructive fraud provision in Sec. 548(a)(2). However, under Ohio law, once the plaintiff shows that the transfer in question lacked fair consideration, the burden of proof shifts to the debtor to prove his solvency on the date of the transfer and afterward. *MacQueen v. The Dollar Savings Bank Co.*, 133 Ohio St. 579, 585, 15 N.E.2d 529 (1938); *Oliver v. Moore*, 23 Ohio St. 473 (1872); *The Cellar Lumber Co. v. Holley*, 9 O.A.2d 293, 224 N.E.2d 364 (Ohio Ct.App.1967); *Toledo Trust Co. v. Poole (In re Poole)*, 15 B.R. 422, 428–29 (Bankr. N.D.Oh.1981). The same holds true in other states which have adopted the Uniform Fraudulent Conveyance Act. *See Reigle v. Leinheiser (In re Leinheiser)*, 51 B.R. 164 (Bankr.E.D.Pa.1985); *Hassett v. Far West Federal Savings & Loan Assn., (In re O.P.M. Leasing Services, Inc.)*, 40 B.R. 380 (Bankr.S.D.N.Y.1984).

DPAC II and SHEPPARD argue that there are no material issues of fact left to be resolved with regard to the constructive fraud provisions of the Bankruptcy Code and The Ohio Revised Code. They assert that a reasonably equivalent value was given in the subject transactions and that as long as some entity received a reasonably equivalent value for the incurring of the loan obligation or the transferring of a security interest, Plaintiff's case must fail regardless of whether OHIO CORRUGATING benefitted from the transaction. In other words, Defendants argue that under 11 U.S.C. Sec. 548(a)(2) and O.R.C. Sec. 1336.04, it doesn't matter if the Debtor is the one to receive a reasonably equivalent value in exchange for its incurring of an obligation or transferring of a security interest as long as some entity receives such value and the transaction was accomplished at arms' length.

■ We disagree with Defendants' test of who must receive a reasonably equivalent value. Under Sec. 548(a)(2), it is necessary to show an economic benefit to the entity incurring the obligation or making the transfer. *Rubin v. Manufacturers' Hanover Trust Co.*, 661 F.2d 979 (2d

Cir.1981) (construing Sec. 67(d) of the former Bankruptcy Act). An analysis of an allegedly fraudulent transfer must be directed at what the Debtor surrendered and what the Debtor received, irrespective of what any third party may have gained or lost. The rationale of the fraudulent transfer provision of the Code is to preserve the assets of the estate. *Martin v. Phillips (In re Butcher)*, 58 B.R. 128 (Bankr.E.D. Tenn.1986). However, the transaction's benefit to the Debtor need not be direct. Instead, the benefit may come to the Debtor indirectly through benefit to a third party. If the consideration or value given to the third party ultimately lands in the Debtor's hands or otherwise confers an economic benefit upon the Debtor, the estate has been preserved and a showing will not be made under Sec. 548(a)(2). *See Rubin*, 661 F.2d at 991. The same rules apply to an analysis under Sec. 1336.04, O.R.C.

■ In this case, the inquiry must be directed at whether OHIO CORRUGATING received a reasonably equivalent value in exchange for its incurring of the obligation and transferring of the security interest. At this point, the record in this case is not conclusive on this issue.

Secondly, DPAC II and SHEPPARD argue that there are no material issues of fact to be resolved with regard to the constructive fraud allegations since, they assert, OHIO CORRUGATING was not insolvent at the time the transactions occurred and was not rendered insolvent as a result of the transactions.

■ Whether a debtor is insolvent at the time a contested transfer occurs or is thereby rendered insolvent is a question of fact which must be determined on a case-by-case basis. *Credit Managers Assn. of Southern California v. The Federal Co.*, 629 F.Supp. 175 (C.D.Cal.1985), *citing Wells Fargo Bank v. Desert View Building Supplies, Inc.*, 475 F.Supp. 693 (D.Nev. 1978), *aff'd.*, 633 F.2d 225 (9th Cir.1980). Here, DPAC II and SHEPPARD assert that OHIO CORRUGATING was not insolvent at the time the transfer/obligation

occurred and, further, that OHIO CORRU-GATING was not rendered insolvent as a result of the subject transactions. Rather, they assert, other factors which were completely unrelated to the leveraged buyout; i.e., the prevailing market conditions, caused the ultimate insolvency of, and Chapter 11 filing by, OHIO CORRUGATING. DPAC II and SHEPPARD offer as supporting data for their assertions an Affidavit of SHEPPARD and a diagram of prices in the market during the relevant periods of time. Plaintiff has submitted documentary evidence in support of its position that summary judgment is inappropriate at this time. Upon a review of the data, the Court determines that there remain questions of fact with regard to OHIO CORRUGATING's solvency, which can only be resolved upon a trial of this cause.

The Court determines that summary judgment is inappropriate with respect to the constructive fraud allegations found in Plaintiff's Complaint. The Court will, therefore, overrule the Motions of DPAC II and SHEPPARD to that extent.

DPAC II and SHEPPARD also argue that they are entitled to summary judgment to the extent Plaintiff's Complaint seeks to recover under the actual fraud provisions of the Bankruptcy Code and The Ohio Revised Code as the Complaint fails to allege with particularity the fraud involved. The Complaint is unclear as to whether actual fraud was intended to be alleged. To the extent that it was so intended, we agree with DPAC II and SHEPPARD on this point and will grant summary judgment in favor of them with regard to allegations of actual fraud, if any, in Plaintiff's Complaint. Rule 9(B), Ohio Rules of Civil Procedure; Rule 9(b), F.R.Civ.Pro.

Finally, DPAC II and SHEPPARD pray for summary judgment on Count Three of the Complaint since the Count relates specifically to the equitable subordination of the claims of SECURITY PACIFIC. As that issue has been resolved with Court approval, we will grant summary judgment in favor of DPAC II and SHEPPARD with regard to Count Three of the Complaint.

An appropriate Order shall issue.