**In re MORSE TOOL, INC. Debtor.**

**David FERRARI, Trustee of Morse Tool, Inc., Plaintiff,**

v.

**BARCLAYS BUSINESS CREDIT, INC., Defendant.**

Bankruptcy No. 87–10588–CJK.
Adv. No. 87–1303–CJK.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 22, 1989.

See also, Bkrtcy., 108 B.R. 384.

Gene Landy, Mark N. Berman, Boston, Mass., for trustee.

Charles R. Bennett, Jr., Boston, Mass., for Barclays Business Credit, Inc.

**MEMORANDUM OF DECISION ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE EXISTENCE OF QUALIFYING UNSECURED CREDITORS**

CAROL J. KENNER, Bankruptcy Judge.

The plaintiff, the Chapter 7 Trustee of Morse Tool, Inc. ("the Trustee"), has filed a motion for partial summary judgment on the issue of whether there exist qualified unsecured creditors under 11 U.S.C. § 544(b) such that the Trustee has standing to bring a fraudulent conveyance claim against the defendant, Barclays Business Credit, Inc. ("Barclays"), under the Massachusetts fraudulent conveyance law, G.L. c. 109A. The Trustee brings the fraudulent conveyance claim pursuant to his authority under 11 U.S.C. § 544(b), which states:

> The trustee may avoid any transfer of an interest of the debtor in property or an obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Therefore, in order to bring an avoidance action pursuant to § 544(b), the Trustee must demonstrate the existence of a "qualified unsecured creditor": a creditor holding an allowable claim who could bring the same avoidance action the Trustee seeks to bring.

In a separate memorandum, this Court ruled that in this case, the "applicable law" to which § 544(b) refers is G.L. c. 109A, the Uniform Fraudulent Conveyance Act ("UFCA") as adopted by the Commonwealth of Massachusetts. The Trustee asserts causes of action under sections 4, 5, and 7 of the UFCA, G.L. c. 109A, §§ 4, 5, and 7. Therefore, the Trustee must show that there exists at least one qualified unsecured creditor for each of those sections.

*Future Creditors*

Sections 5 and 7 [1] expressly provide remedies for both those who were creditors at the time of the allegedly fraudulent conveyance ("present creditors") and those who later became creditors during the continuance of the debtor's business ("future creditors"). With respect to his claims under sections 5 and 7, the Trustee relies on the claims of both types of creditors, but he need only show the existence of one creditor of one type. Barclays does not dispute that there exist many "future creditors" who hold allowable unsecured claims in this Chapter 7 case. The existence of such creditors is established and uncontroverted. Therefore, I conclude that the Trustee has standing to proceed under sections 5 and 7 of G.L. c. 109A.

■ In so doing, I reject Barclays' argument that despite the express language of sections 5 and 7, future creditors have no standing under those sections to avoid a security interest given to a lender in conjunction with a well-publicized leveraged buy-out ("LBO"), as was Barclays' security interest. Barclays makes this argument in reliance on *Kupetz v. Wolf,* 845 F.2d 842, 849 fn. 16 (9th Cir.1988) and *Credit Managers Ass'n. of Southern California v. Federal Co.,* 629 F.Supp. 175, 180–181 (C.D. Cal.1985), in both of which the courts were concerned with the reach of UFCA § 5 as adopted in California. Both courts reasoned that fraudulent conveyance statutes were designed to protect creditors only from secret transactions, not from public LBOs in which there was no actual intent to defraud; creditors who knew of the LBO and extended credit to the debtor after it transpired were taking an informed risk and so should not be permitted to use the fraudulent conveyance laws to "insure" their risk.

I reject this position as contrary to the plain language of sections 5 and 7. Those sections expressly extend their benefits to future creditors. See G.L. c. 109A, §§ 5 and 7; *Widett v. George,* 336 Mass. 746, 752, 148 N.E.2d 172 (1958). They do not distinguish between future creditors who extend credit with knowledge of the fraudulent conveyance and those that extend credit without knowledge of it. Nor do they distinguish between fraudulent conveyances that occur in the context of a leveraged buy-out and those that do not. Rather, they apply to all future creditors and to all conveyances that satisfy their definitions of fraudulent. And in doing so, they do not produce such absurd results as to warrant the recognition of an implied exception for future creditors who extended credit with knowledge of the fraudulent conveyance, where the conveyance occurred in the context of an LBO.

■ Courts should not create or recognize implied exceptions to clear statutes unless necessary to prevent results so absurd or unreasonable that they could not fairly be attributable to legislative design. *United States v. Rutherford,* 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979). No such absurd or unreasonable result would obtain here. Courts and commentators have made various policy arguments for creating exceptions of the type that Barclays advocates. See *Credit Managers Ass'n. of Southern California v. Federal Co.,* 629 F.Supp. at 180–181; *Kupetz v. Wolf,* 845 F.2d at 849 fn. 16; and Baird & Jackson, "Fraudulent Conveyance Law and Its Proper Domain," 38 *Vand.L. Rev.* 829 (1985). They argue, among other things, that leveraged buy-outs—which, they contend, have social utility, including for creditors—will be discouraged if the courts apply fraudulent conveyance laws to

---

**1.** G.L. c. 109A, § 5 provides as follows:

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction, for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.

G.L. c. 109A, § 7 provides as follows:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

them indiscriminately; that leveraged buy-outs are not the kinds of transactions that fraudulent conveyance laws (neither 13 Eliz. ch. 5 nor the Uniform Fraudulent Conveyance Act) were intended to deter and remedy; that creditors can protect themselves from leveraged buy-outs by other means, such as by contracting to prohibit them; and that future creditors who extended credit knowing of the buy-out should not be able to use fraudulent conveyance laws as insurance policies for failed LBOs. These arguments have some merit, but so do the counterarguments: for example, that not all leveraged buy-outs have social utility or benefit for creditors, and fraudulent conveyance laws may help deter or redress the worst of them; that few creditors have the bargaining power to prevent the debtor from engaging in an LBO; that many trade creditors and other future creditors do not and cannot, in the normal course of business, perform a solvency or cash-flow analysis of the debtor before extending credit; and that involuntary future creditors (such as taxing authorities and tort creditors) do not have freedom to decide whether to extend credit to the target of an LBO.

I need not decide which side has the better argument. The point is that the application of the future creditor provisions of sections 5 and 7 to leveraged buy-outs is not so absurd or unreasonable that it could not fairly be attributed to legislative design. See *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1297 and notes 2 and 3 (3rd Cir.1986) ("The application of fraudulent conveyance law [the UFCA] to certain leveraged buy-outs is not clearly bad public policy." *Id.* at 1297); *Matter of Ohio Corrugating Co.*, 70 B.R.

920, 925–926 (Bankr.N.D.Ohio 1987); *In re Anderson Industries, Inc.*, 55 B.R. 922, 926 (Bankr.W.D.Mich.1985). As the Third Circuit stated in *Tabor Court*, "if the UFCA is not to be applied to leveraged buy-outs, it should be for the state legislators, not the courts to decide." *Tabor Court*, 803 F.2d at 1297. I conclude that sections 5 and 7 should not be construed as containing implied exceptions prohibiting future creditors from attacking leveraged buy-outs as fraudulent conveyances. Therefore, the Trustee is entitled to summary judgment as a matter of law as to the existence of qualified unsecured creditors under sections 5 and 7.

*Present Creditors*

In order to proceed under G.L. c. 109A, § 4,[2] the Trustee must show the existence of at least one creditor holding an allowable unsecured claim that existed at the time of the allegedly fraudulent transfer. 11 U.S.C. § 544(b); G.L. c. 109A, § 4. The Trustee has alleged the existence of nine such claimants. Barclays disputes the validity of each of their claims.[3]

I deny the Trustee's motion as to seven of the claimants[4] because the Trustee, by failing to identify these claimants in his initial memorandum on this motion for partial summary judgment, deprived Barclays of adequate notice and an opportunity to respond. I also deny the motion as to an eighth claimant, the Pension Benefit Guaranty Corporation ("PBGC"), because the PBGC claim was filed late and so cannot be allowed,[5] the Trustee having failed to set forth good cause for reconsidering and allowing a late-filed claim.

In view of the various defects in the Trustee's motion, I need not rule on this argument now.

---

**2.** G.L. c. § 4 provides as follows:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

**3.** Barclays also argues that because of the nature of the August 24, 1984 transaction, of which the alleged fraudulent conveyances were a part, the Debtor could not have had existing creditors who were harmed by that transaction.

**4.** The seven claimants are Hercules Tool Company, Thomas Phillips, Lawrence Green, William King, Mary Lucille Burfiend, Local 277 (the claim for unpaid pension contributions), and Connecticut General Life Insurance Company, in its capacity as Trustee of the Morse Cutting Tool Pension Fund.

**5.** This ruling shall not bind the PBGC, who was not a party to this action.

Lastly, I deny the motion for partial summary judgment with respect to the claim of the United Electrical, Radio and Machine Workers of America and its Local 277 for retiree life and health insurance benefits (the "Union claim"). The claim is attached as Exhibit I to the Affidavit of Kim E. Perry. The Trustee did not in his initial evidentiary submissions show that the Union claim was premised on the 1982 Union contract or any other contract that came into existence before August 24, 1984.[6] Therefore, I have no reason to conclude that the Union claim existed at the time of the alleged fraudulent transfer.

*Conclusion*

In summary, I deny the Trustee's motion for partial summary judgment with respect to the existence of qualified unsecured present creditors; and I allow the motion with respect to the existence of qualified unsecured future creditors. A separate order will enter accordingly.

---

**6.** The Trustee's later submissions were not considered; Barclays did not get adequate notice

and sufficient time to respond to those materials.